**FIRST DELAWARE VALLEY CITI-ZENS TELEVISION, INC.**

v.

**CBS, INC. and WHP, Inc.**

**Civ. A. No. 75–1152.**

United States District Court, E. D. Pennsylvania.

June 18, 1975.

On Motion to Reconsider July 1, 1975.

Stuart H. Savett, Donald L. Weinberg, Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff.

J. Roger Wollenberg, Timothy N. Black, of Wilmer, Cutler & Pickering, Washington, D. C. (Morgan, Lewis & Bockius, Benjamin M. Quigg, Jr., Stephen W. Armstrong, Philadelphia, Pa., of counsel), for CBS, Inc.

Max L. Lieberman, of Pelino, Wasserstrom, Chucas & Monteverde, Philadelphia, Pa. (Daniel M. Redmond, and Richard D. Marks, of Dow, Lohnes & Albertson, Washington, D. C., of counsel), for WHP, Inc.

## MEMORANDUM

GORBEY, District Judge.

The plaintiff's claim in Count I arises under §§ 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) for violations of §§ 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and of § 7 of the Clayton Act (15 U.S.C. § 18). The court has jurisdiction based upon the aforementioned Sections of the Clayton Act and 28 U.S.C. § 1337. The cause of action arose in the Eastern Judicial District of Pennsylvania, and venue is in accord with 15 U.S.C. § 15 and 28 U.S.C. § 1391(b) and (c).

A second Count is based upon common law conspiracy, unfair competition and interference with contractual relations. Jurisdiction and venue are pendent to Count I. The amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

The remedies sought by plaintiff include damages, treble damages under Count I, and injunctive relief. The allegations of plaintiff in this case must be appraised in the light of a proceeding currently pending before the Federal Communications Commission ("FCC") in which plaintiff and defendant CBS are competing applicants for authority to operate a television station on Channel 10, Philadelphia. Plaintiff contends, in this antitrust action, that defendant CBS, aided by defendant WHP, Inc., a member of the CBS television network, has sought to disqualify plaintiff in the FCC proceedings by denying it access to an antenna site. The specific factual issues presented by the complaint are:

> "whether defendant CBS has sought to prevent plaintiff from utilizing the present transmitter site and broadcast tower presently owned by CBS; whether the two defendants have sought to deprive plaintiff of engineering expertise necessary to the evaluation of alternate transmitter sites, including the Banks Tower in Philadelphia; whether CBS has sought by coercive or deceptive means to cause WHYY-TV, Wilmington, Delaware, to intervene on the side of defendant CBS in the FCC proceedings."

The Review Board in the FCC proceedings has determined that the refusal of CBS to lease the present transmitter site to the plaintiff, was not a violation of the FCC rules.

The contention of plaintiff that CBS was involved in the termination of engineering services of Cohen & Dippell, was initially disposed of when the Review Board of FCC refused to consider it as an issue because "in our view the subject petition does not comply with the support and specificity requirements of § 1.229(c) of the Commission's rules" (Memorandum Opinion and Order of May 13, 1975, P. 3).

The question as to the alleged misinformation given by CBS to WHYY-TV, is not presently before the FCC. As to the specific rulings in the administrative proceedings, it is to be noted that such rulings are reviewable by the full Commission and ultimately by the Court of Appeals for the District of Columbia Circuit (47 C.F.R. §§ 1.271–1.282; 47 U.S.C. § 402(b)).

The defendant, CBS, pursuant to Rule 12 of the Federal Rules of Civil Procedure has filed a motion (1) to dismiss this action without prejudice to its reinstitution upon the final conclusion of the proceedings now pending before the FCC, or, alternatively that the court stay this action pending such final conclusion, and (2) that the court dismiss with prejudice that portion of the complaint which alleges that CBS violated the antitrust laws by seeking by false statements to induce station WHYY-TV to intervene in the FCC Proceedings.

The requested dismissal of the complaint without prejudice, or the alternative, staying proceedings pending the conclusion of the FCC proceedings is urged on the ground that *primary jurisdiction* over the issues in this case lies with the FCC. The second request with respect to the allegations relative to WHYY-TV, rests upon the contention that such intervention is not actionable under the so-called Noerr-Pennington exemption from antitrust liability.

*Eastern Rail. Pres. Conf. v. Noerr Motor Frgt., Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

> "The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cogni-

zable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *United States v. Western Pacific R. Co.*, 352 U.S. 59, 63–64, 77 S. Ct. 161, 165, 1 L.Ed.2d 126.

"Thus, when questions arose as to the applicability of the doctrine to transactions allegedly violative of the antitrust laws, particularly involving fully regulated industries whose members were forced to charge only reasonable rates approved by the appropriate commission, this Court found the doctrine applicable." *United States v. Radio Corporation of America*, 358 U. S. 334, 346, 347, 79 S.Ct. 457, 465, 3 L.Ed.2d 354 (1959).

Included in those cases to which the doctrine was applied are cases involving common carriers by rail and water, which by statute, could charge only the published tariff and that tariff must have been found by the appropriate agency to have been reasonable. Where free rate competition was modified by federal controls,

"The Court's concern was that the agency which was expert in and responsible for, administering those controls should be given the opportunity to determine questions within its special competence as an aid to the courts in resolving federal antitrust policy and federal regulatory patterns into a cohesive whole. That some resolution is necessary when the antitrust policy of free competition is placed beside a regulatory scheme involving fixed rates is obvious. *Cf. McLean Trucking Co. v. United States*, 321 U.S. 67, 64 S.Ct. 370, 88 L.Ed. 544. Accordingly, this Court consistently held that when rates and practices relating thereto were challenged under the antitrust laws, the agencies had pri-

mary jurisdiction to consider the reasonableness of such rates and practices in the light of the many relevant factors including alleged antitrust violations, for otherwise sporadic action by federal courts would disrupt an agency's delicate regulatory scheme, and would throw existing rate structure out of balance."

*Id.* at 348, 79 S.Ct. at 466.

The situation in the instant case does not bring it within the primary jurisdiction doctrine, because radio broadcasters, including television broadcasters "are not included in the definition of common carriers in § 3(h) of the Communications Act, 47 U.S.C. § 153(h), as are telephone and telegraph companies. Thus the extensive controls, including rate regulation, of Title II of the Communications Act, 47 U.S.C. §§ 201–222, do not apply. Television broadcasters remain free to set their own advertising rates . . . Thus, there being no pervasive regulatory scheme, and no rate structures to throw out of balance, sporadic action by federal courts can work no mischief. The justification for primary jurisdiction accordingly disappears." *United States v. Radio Corporation of America, supra,* at 349, 350, 79 S.Ct. at 466.

■ The FCC in determining whether the "public interest, convenience, and necessity" will be served by proposed action of a broadcaster, may "deny applications as not in the public interest where violations of the Sherman Act have been determined to exist, its approval of transactions which might involve Sherman Act violations is not a determination that the Sherman Act has not been violated, and therefore cannot forestall the United States from subsequently bringing an antitrust suit challenging those transactions." *Id.*, footnote 18, page 350, 79 S.Ct. page 467. *A fortiori,* such administrative approval would not curtail the power of a private person from proceeding under the antitrust laws. "Thus, the legislative history of the Act reveals that the Commis-

sion was not given the power to decide antitrust issues as such, and that Commission action was not intended to prevent enforcement of the antitrust laws in federal courts." *United States v. Radio Corporation of America, supra,* at 346, 79 S.Ct. at 464.

"Nevertheless, Congress has provided another means by which the action of the parties may be reviewed, for § 4 of the Clayton Act (15 U.S.C. § 15) creates a civil action for treble damages for any person 'who shall be injured in his business or property by reason of anything forbidden in the antitrust laws'."

\* \* \* \* \* \*

"Section 4 of the Clayton Act was designed to supply ancillary force of private investigators to supplement the Department of Justice in law enforcement. *Quemos Theatre Company, Inc. v. Warner Bros. Pictures, Inc.,* 35 F.Supp. 949 (D.C.N.J.1942); *Weinberg v. Sinclair Refining Co.,* 48 F.Supp. 203 (D.C.N.Y.1942)."

"Another court has said that the allowance of the action for treble damages has as its purpose not merely the redress of injuries to individuals occasioned by prohibited practices but aid in achieving the broad social object of the statute. *Machtronics, Inc. v. Zirpoli,* 316 F.2d 820 (9th Cir. 1963)" *In re Pittsburgh & Lake Erie RR Co. Secur. & Antitr. Lit.,* 378 F.Supp. 441 (E.D.Pa.1974).

In *Hecht v. Pro-Football, Inc.,* 144 U.S.App.D.C. 56, 444 F.2d 931, 943–944 (1971), the court wrote:

"As another example, in *United States v. Radio Corporation of America,* the Court held that the Federal Communications Commission had no authority to decide antitrust issues. The Federal Communications Act explicitly makes the antitrust laws applicable to the broadcast industry . . .

"From this review of recent regulatory agency cases involving the applicability or non-applicability of the antitrust laws, it clearly emerges that Congress knows how to spell out an exemption from the antitrust law when it wants to do so, *e. g.,* the CAB and FMC, where the agencies give consideration to antitrust policy but make the initial decisions themselves, and in contrast to proceedings in the Federal Communications Commission, where any action by the FCC is specifically open to antitrust challenge."

This conclusion accords with *Industrial Commun. Sys. Inc. v. Pacific Tel. & Tel. Co.,* 505 F.2d 152 (9th Cir. 1974) in which the court stated at page 156:

"Whether or not the doctrine of primary jurisdiction applies depends on the extent and amount of regulatory powers vested in the governmental agencies involved. In instances where the companies or activities were fully regulated, the doctrine of primary jurisdiction applied . . . (citations omitted). At the other end of the spectrum are those cases concerning the broadcasting industry, where the lack of statutorily mandated control rendered the doctrine inapplicable. See *Radio Corporation of America, supra,* 358 U.S. at 348–349, 79 S.Ct. at 466 (Radio and television broadcasters 'are not included in the definition of common carriers . . . as are telephone and telegraph companies. Thus the extensive controls . . . of the Communications Act . . . do not apply;' (*Federal Communications Comm'n. v. Sanders Bros. Radio Station,* 309 U.S. 470, 474, 60 S.Ct. 693, 84 L.Ed. 869 (1940)."

The cases relied upon by defendant CBS, do not support its argument that the doctrine of primary jurisdiction applies to the instant case. For example, *MCI Communications Corp. v. American Tel. & Tel. Co.,* 496 F.2d 214 (3d Cir. 1974) in which the Court of Appeals ordered that proceedings in the District Court be stayed and jurisdiction retained pending the administrative decision by the FCC. It is to be noted that it is a *telephone company* and not a *radio or television company* that was

there involved. The significance of that difference is indicated in *United States v. Radio Corporation of America, supra,* where the court in determining that the doctrine of primary jurisdiction was applicable, pointed out that extensive controls, including rate regulations of Title II of the Communications Act which applied to telephone and telegraph companies do not apply to television broadcasters. *Supra,* 358 U.S. page 349, 79 S.Ct. 457.

The one case involving a broadcasting company to which defendant CBS makes reference and in which the Ninth Circuit Court of Appeals applied the doctrine of primary jurisdiction is a very slender reed upon which to rely. *Chronicle Publishing Co. v. National Broadcasting Co.,* 294 F.2d 744 (1961). No reference is made in the opinion to the RCA case decided by the Supreme Court of the United States in 1959. However, in 1974, when another case, also involving a telephone company, came before the Ninth Circuit Court, reference was made to the RCA case. *Industrial Commun. Sys. Inc. v. Pacific Tel. & Tel. Co., supra.* The court wrote:

> "At the other end of the spectrum are those cases concerning the broadcasting industry, where the lack of statutorily mandated control rendered the doctrine inapplicable. See *Radio Corporation of America, supra,* 358 U.S. at 348–349, 79 S.Ct. at 466 . . ."

Thus we may now properly conclude that the law as stated by the Supreme Court of the United States has finally been accepted as the law in the Ninth Circuit. Accordingly, the *Chronicle* case, as authority with respect to the broadcasting industry, would seem to have the relative value of a four card flush.

■ We may now take it as established "that the Federal Communications Commission has no authority to decide the antitrust issues . . ." And "any action by the FCC is specifically open to antitrust challenge". *Hecht v. Pro-Football, Inc., supra,* relying upon the RCA case.

The issues before the FCC are not the issues before this court, and a decision in this case does not depend upon the determination of any fact issues by the FCC.

> "The determination of whether the charged antitrust violations have occurred does not require administrative expertise and court action will not impair or interfere with the coherence or uniformity of an intricate administrative program."

*Denver Union Stock Yard Co. v. Denver Live Stock Com'n. Co.,* 404 F.2d 1055, 1059 (10th Cir. 1968).

Also, in this case there is an issue with respect to limited technical or scientific questions, which in the opinion of the Broadcast Bureau's opposition to CBS' fourth motion to enlarge issues, should not be considered by the FCC. The Broadcast Bureau is the FCC's staff of legal and technical personnel which participates as a right in proceedings before the Review Board of the FCC. *In re Applications of: CBS, Inc. (WCAU–TV), For Renewal of Broadcast License,* Docket No. 20010. *First Delaware Valley Citizens Television, Inc., For Construction Permit For New Television Broadcast Station,* Docket No. 20011.

With respect to the contention of CBS that final action in the FCC proceeding might render moot plaintiff's claims, it is clear that even if plaintiff obtains the requested license, the FCC has no power to determine the antitrust issue hence could not provide the remedies available under the statutes where a violation of the antitrust laws has occurred.

Attention will now be given to the motion of defendant CBS that the complaint be dismissed insofar as it seeks to state a claim on the basis of alleged efforts to induce station WHYY–TV to intervene in the proceedings before the FCC. CBS contends, and plaintiff denies that the allegations are within the so-called Noerr-Pennington exemption from antitrust liability.

"The Noerr-Pennington principle is a judicially implied exception to the general rule that an unlawful purpose may bring otherwise lawful means within the proscription of the Sherman Act."

*Trucking Unlimited v. California Motor Transport Co.,* 432 F.2d 755, 757 (9th Cir. 1970).

In *Eastern Rail. Pres. Conf. v. Noerr Motor Frgt., Inc., supra,* a group of trucking companies sued a group of railroads to restrain them from an alleged conspiracy to monopolize the long distance freight business in violation of the antitrust laws and to obtain damages. The Court held that no cause of action was alleged insofar as it was predicated upon mere attempts to influence the Legislative Branch for the passage of laws or the Executive Branch for their enforcement. The Court reasoned as follows:

"(1) In a representative democracy such as this, these branches of government act on behalf of the people and, to a very large extent, the whole concept of representation depends upon the ability of the people to make their wishes known to their representatives. To hold that the government retains a power to act in this representative capacity and yet hold, at the same time, that the people cannot freely inform the government of their wishes would impute to the Sherman Act a purpose to regulate, not business activity, but political activity, a purpose which would have no basis whatever in the legislative history of that Act."

*Id.* 365 U.S. at 137, 81 S.Ct. at 529.

"(2) The right of petition is one of the freedoms protected by the Bill of Rights and we cannot, of course, lightly impute to Congress an intent to invade these freedoms."

*Id.* 365 U.S. at 138, 81 S.Ct. at 530.

In 1965 *United Mine Workers v. Pennington* was decided. 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626. In that case a small mining company brought an antitrust action against larger mining companies and labor unions, alleging a conspiracy in violation of the Sherman Act, one of the objectives being to cause the Secretary of Labor to set unreasonably high wage rates and the ultimate objective being to put the small companies out of business. The Supreme Court, following Noerr held that:

"Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition."

*Id.* at 670, 85 S.Ct. at 1593.

In *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S. Ct. 609, 30 L.Ed.2d 642 (1972), the Supreme Court, after referring to the *Noerr* and *Pennington* cases stated:

"The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the Legislature, and arms of the Executive) and to Courts, the third branch of the government."

*Id.* at 510, 92 S.Ct. at 611.

After referring to the allegations of the complaint (with respect to which the District Court had granted the motion to dismiss) the court stated that: "If these facts are proved, a violation of the antitrust laws has been established." *Id.* at 515, 92 S.Ct. at 614. If proved, those allegations would show "a combination of entrepreneurs to harass and deter their competitors from having 'free and unlimited access' to the agencies and courts, to defeat that right by massive, concerted, and purposeful activities of the group are ways of building up one empire and destroying another." *Id.* at 515, 92 S.Ct. at 614. Also "On their face the above-quoted allegations come within the 'sham' exception in the *Noerr* case, as adapted to the adjudicatory process." *Id.* at 516, 92 S.Ct. at 614.

The allegations objected to by CBS relate to the alleged effort of CBS, by false information given to WHYY–TV to induce it as a potentially interested party to intervene in the proceedings before the FCC. If these allegations

could be proved, they would not corrupt the administrative or judicial processes, and they most obviously have not deterred the plaintiff from having free and unlimited access to the FCC. Nor, if proved, would it constitute "an attempt to interfere directly with the business relationships of a competitor". *Noerr, supra,* 365 U.S. at 144, 81 S.Ct. at 533.

While it now appears at this early stage, that the allegations in Count I dealing with the attempt to involve WHYY–TV in the FCC proceedings do come within the Noerr-Pennington exception from antitrust liability, it is, nevertheless, alleged to be a part of defendant's conduct, the totality of which is subject to judicial scrutiny in this antitrust proceeding. Also, it is not known what other facts may be developed as discovery proceeds. Therefore, the motion of CBS to dismiss that portion of the complaint is denied, without prejudice to the right to renew the motion after discovery has been completed.

## ON MOTION TO RECONSIDER

Defendant CBS, Inc. has filed a motion that this court reconsider its order of June 18, 1975, denying CBS' motion for dismissal or stay and grant the relief requested thereby, or in the alternative that the court amend its order to certify an interlocutory appeal pursuant to the provisions of 28 U.S.C. § 1292(b).

The defendant by this motion continues to invite this court to disregard *United States v. Radio Corporation of America,* 358 U.S. 334, 79 S.Ct. 457, 3 L.Ed.2d 354 (1959) because what the court said in regard to "primary jurisdiction" in a broadcasting situation was dictum. This invitation the court declines, respectfully but firmly, because it does not believe that the Justices of the United States Supreme Court intended their opinion to be regarded by courts, or attorneys, as a mere "exercise in futility". That it has not been so regarded by courts is indicated for example by *Carter v. American Telephone & Telegraph Company,* 365 F.2d 486 (5th Cir. 1966) in which the court wrote at page 498:

"Although *United States v. Radio Corp. of America, supra,* stands for the proposition that there is no necessity to invoke the primary jurisdiction of the FCC in an antitrust suit challenging a television acquisition, the Court, contrasting television with the 'pervasive regulatory scheme' prescribed in the Communications Act for telephone and telegraph companies, fully recognized that where tariff structures might be thrown 'out of balance' and 'sporadic action by federal courts' might 'work * * * mischief,' 358 U.S. at 350, 79 S.Ct. at 467, 3 L.Ed.2d at 365, primary jurisdiction is available."

Also, *Industrial Commun. Sys. Inc. v. Pacific Tel. & Tel. Co.,* 505 F.2d 152 (9th Cir. 1974), in which the court wrote at page 156:

"Whether or not the doctrine of primary jurisdiction applies depends on the extent and amount of regulatory powers vested in the governmental agencies involved. In instances where the companies or activities were fully regulated, the doctrine of primary jurisdiction applied . . . (citations omitted). *At the other end of the spectrum are those cases concerning the broadcasting industry, where the lack of statutorily mandated control rendered the doctrine inapplicable.* See *Radio Corporation of America, supra,* 358 U.S. at 348–349, 79 S.Ct. at 466 (Radio and television broadcasters 'are not included in the definition of common carriers . . . as are telephone and telegraph companies. Thus the extensive controls . . . of the Communications Act . . . do not apply'); *Federal Communications Comm'n. v. Sanders Bros. Radio Station,* 309 U.S. 470, 474, 60 S.Ct. 693, 84 L.Ed. 869 (1940)."

(Emphasis added)

That statement by the court which had decided the *Chronicle Publishing Co. v.*

*National Broadcasting Co.*, 294 F.2d 744 (9th Cir. 1961) in which it applied the doctrine of "primary jurisdiction" and which never mentioned the RCA case, is an implicit recognition that the law as respects the broadcasting industry is to be found in the *United States v. Radio Corporation of America, supra,* and not in the *Chronicle* case.

Accordingly, this court in its memorandum and order of June 18, 1975, denied the motion to stay proceedings pending the conclusion of FCC proceedings, involving CBS and the plaintiff herein, and did so on the basis that its refusal so to do was strictly in accordance with the views of the Supreme Court as expressed in *United States v. Radio Corporation of America, supra,* and the reasoning of the courts as found in the many cases properly applying the doctrine to telegraph and telephone litigation.

Since the basis of plaintiff's complaint is that a conspiracy existed having as its purpose the elimination or destruction of the sole competitor of CBS, by unfair means, a per se violation of Section 1 of the Sherman Act (*See duPont Walston, Inc. v. E. F. Hutton & Company, Inc.,* 368 F.Supp. 306 (S.D. Fla.1973) at pages 307–308), the motion to dismiss was also denied in the court's memorandum and order of June 18, 1975.

The court having concluded that the Supreme Court's opinion in *United States v. Radio Corporation of America, supra,* establishes that the doctrine of "primary jurisdiction" is not applicable to antitrust proceedings involving the broadcasting industry, delay in the progress of this case which would necessarily result from an interlocutory appeal pursuant to the provisions of 28 U.S.C. § 1292(b) would not be in the public interest, would delay rather than materially advance the ultimate termination of the litigation, and would be prejudicial to the plaintiff. Furthermore, both defendants have denied the existence of a conspiracy. Under such circumstances, defendants, as well as plaintiff, are entitled to have the facts developed and the case tried on its merits without undue delay. Accordingly, the motion is denied and discovery is to proceed forthwith.