Paul LERNER, d/b/a Lerner Oil Company, Plaintiff-Petitioner,

v.

ATLANTIC RICHFIELD COMPANY, a Pennsylvania Corporation, Defendant-Respondent.

No. 9–68.

Temporary Emergency Court of Appeals.

Submitted Aug. 6, 1982.

Decided Oct. 4, 1982.

James S. Williams and Michael H. Bonner, Froneberger, Bonner & Zeff, San Francisco, Cal. and Maxwell Blecher, Blecher, Collins & Hoecker, Los Angeles, Cal., for plaintiff-petitioner.

F. Bruce Dodge, Samuel R. Miller and Paul T. Friedman, Morrison & Foerster, San Francisco, Cal. and Richard C. Morse and Richard A. Stephens, Atlantic Richfield Co., Los Angeles, Cal., for defendant-respondent.

Before INGRAHAM, ESTES and BECKER, Judges.

WILLIAM H. BECKER, Judge.

### ORDER DENYING PETITION FOR LEAVE TO APPEAL

Pursuant to Rule 5, Federal Rules of Appellate Procedure (F.R.A.P.), Paul Lerner, doing business as Lerner Oil Company (Lerner), petitions for permission of this Court, under 28 U.S.C. § 1292(b), to appeal from an interlocutory order of the United States District Court granting a motion of the respondent Atlantic Richfield Company (ARCO) for a partial summary judgment. For the reasons stated below we deny the petition of Lerner for leave to appeal from the interlocutory order.

#### Proceedings in the District Court

Petitioner Lerner is the plaintiff in an action filed on July 20, 1979, against ARCO. Later Lerner asserted two claims for relief in an Amended Complaint for Damages and Injunctive Relief filed on November 15, 1979. In the amended complaint Lerner stated that ARCO is (and was) a refiner of motor gasoline under the Emergency Petroleum Allocation Act of 1973 (EPAA) and 10 C.F.R. 212.31 supplying, distributing and marketing motor gasoline pursuant to Section 4 of the EPAA, 10 C.F.R. 211, et seq., and 10 C.F.R. 212, et seq., and that ARCO was the base period supplier of Lerner under the EPAA and regulations. (Par. 3).

In the amended complaint Lerner also stated that Lerner is (and was) an unbranded wholesale purchaser-reseller of motor gasoline to unbranded retail outlets pursuant to Section 4 of the EPAA and 10 C.F.R. 211, et seq. (Par. 4).

In Lerner's "First Claim" Lerner stated that the claim was brought under the EPAA, 15 U.S.C. Section 751 et seq., and regulations issued thereunder; that under the EPAA and applicable pricing regulations Lerner had the right to purchase motor gasoline from ARCO at a price determined by reference to the prices Lerner paid ARCO for motor gasoline on May 15, 1973, with certain adjustments defined in the regulations; that on May 15, 1973, Lerner paid ARCO prices of 12.9 cents per gallon for regular gasoline and 14.9 cents per gallon for premium motor gasoline purchased at the Hynes Terminal of ARCO; that on May 15, 1973, other distributors, whom ARCO referred to as "ex-Rocket" distributors, purchased from ARCO at the same terminal regular gasoline at 13.6 cents per gallon and premium gasoline at 15.6 cents per gallon; that the prices then charged Lerner were based on permanent and customary business factors and practices including, but not limited to, Lerner's high volume purchases; and that ARCO had a corresponding duty under the EPAA and regulations to maintain until the end of price controls the customary price differentials between different classes of purchasers as of May 15, 1973.

In the amended complaint Lerner further stated that beginning on February 1, 1974, and thereafter to the present, ARCO violat-

ed the EPAA, and rules and regulations of the Federal Energy Administration (FEA) and the successor Department of Energy (DOE) "by eliminating the .7 cent per gallon differential between Lerner and the 'ex-Rocket' distributors, by charging Lerner the same prices charged to those distributors, and by effectively treating Lerner as belonging to a class of purchasers to which it did not belong as of May 15, 1973, and does not belong to now"; and that Lerner has been damaged by "ARCO's aforesaid violations of the EPAA and the rules and regulations of FEA and DOE in that ARCO has (1) changed the normal business practices preserved by said statutes and regulations; (2) eliminated the customary price differential historically maintained between Lerner and the 'ex-Rocket' distributors on May 15, 1973; and (3) has charged Lerner .7 cent per gallon more for the motor gasoline purchased than allowed by law."

In the first claim of the amended complaint Lerner further claimed as damages the alleged overcharges and triple damages under Section 5(a) of the EPAA because the alleged violations were willful; and in the absence of willfulness, because of failure to rescind the alleged illegal price increases and overcharges within 90 days after receipt of a written demand by Lerner to do so. Also Lerner alleged issuance on July 20, 1979, by DOE to ARCO of a "Notice of Probable Violation" based on the alleged violation of the refiner price rules of DOE.

In the "Second Claim" for relief Lerner alleged a reduction by ARCO in March 1978 of at least 10% of Lerner's normal purchases, and in March 1979, an alleged wrongful refusal by ARCO of a demand, by Lerner, for an adjustment of the violation under Activation Order No. 1 and appended guidelines cited as 44 Fed.Reg. 11202 (February 28, 1979) and 44 Fed.Reg. 16480 (March 19, 1979). This "Second Claim" for relief is not involved in this proceeding.

On March 30, 1981, ARCO filed a motion for summary judgment contending that recovery of all the claims of Lerner for overcharges and treble damages were barred by the applicable three year and one year statutes of limitation of California, Sections 338(1) and 340(1) of the California Code of Civil Procedure. Thereafter on August 21, 1981, the District Court denied ARCO's original motion for summary judgment in a Memorandum of Decision as follows:

Defendant Atlantic Richfield Company ("ARCO") has moved for summary judgment on the ground that the claim stated in plaintiff Lerner Oil Company's ("Lerner") complaint is barred by the statute of limitations.

Defendant's argument relies primarily on two cases, *Ashland Oil Co. of Cal. v. Union Oil Co. of Cal.,* 567 F.2d 984 (TECA 1977), *cert. denied,* 435 U.S. 994 [98 S.Ct. 1644, 56 L.Ed.2d 83] (1978), and *Shell Oil Co. v. Nelson Oil Co., Inc.,* 627 F.2d 228 (TECA 1980), *cert. denied,* [449 U.S. 1022] 101 S.Ct. 950 [590, 66 L.Ed.2d 484] (1980). In *Ashland* the court held that since a period of limitations was not specified under the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751, *et seq.,* when the issue is raised courts should apply the most analogous state statute of limitations. In the instant case, as in *Ashland,* the most analogous statutes are California Code of Civil Procedure § 338(1) for an action upon a liability created by statute other than a penalty or forfeiture, and § 340(1) for an action upon a statute for a penalty or forfeiture. Section 338(1) is applicable to Lerner's claim for damages for overcharges and § 340(1) is applicable to Lerner's claim for treble damages.

ARCO contends that in *Shell Oil, supra,* the Temporary Emergency Court of Appeals adopted what ARCO has termed the "challenged conduct" test. 627 F.2d at 236. In ARCO's view this test would require a purchaser alleging illegal overcharges to file suit within one or three years under §§ 340(1) and 338(1), respectively, of the first alleged overcharge at the new price or the action would be barred.

The applicability of *Shell Oil* to this case depends heavily on ARCO's characterization of the complaint. ARCO asserts that the sum and substance of Lerner's claim is the "class of purchaser" issue. Read broadly, however, the com-

plaint can fairly be said to incorporate allegations of overcharges which do not necessarily depend on the class of purchaser in which Lerner was placed. Indeed, what ARCO charges its other customers may have no bearing whatsoever on whether Lerner was wrongfully denied the purchase price that it alleges it is entitled to. The central element of Lerner's claim is at what price should it be permitted to purchase gasoline from ARCO, and, as a corollary to that, in what class of purchaser should it be placed.

Moreover, *Shell Oil, supra,* can be distinguished on its facts. In *Shell Oil* the "challenged conduct", which required Nelson to submit its credit card invoices at a different address, resulted in an effective increase in the price charged to Nelson. In the instant case one could just as easily say that ARCO's increase in the price charged to Lerner resulted in Lerner being placed in a different class of purchaser. On a motion for summary judgment the Court must view all reasonable inferences in the light most favorable to the nonmoving party. *Federal Deposit Ins. Corp. v. First Nat. Finance,* 587 F.2d 1009, 1010–1011 (9th Cir. 1978). As long as the complaint can fairly be read as incorporating general allegations of illegal overcharges it cannot be said that they were necessarily the product of a decision to change Lerner's class of purchaser.

Finally, from the face of the complaint it is clear that Lerner has alleged general pricing violations that may or may not have resulted from a change in ARCO's designation of Lerner's class of purchaser. Paragraph 10, lines 8–10 and 13–15 of the complaint alleges that:

> Lerner has been damaged by ARCO's aforesaid violations of the EPAA and the rules and regulations of the FEA and DOE in that ARCO ... (3) has charged Lerner .7 cent per gallon more for motor gasoline purchased than allowed by law.

Additionally, Paragraph 9, lines 32, 1–2 and 5–7 alleges that:

> Beginning on February 1, 1974, and continuing to the present, ARCO has violated the EPAA and the rules and regulations of the FEA and DOE ... by *effectively* treating Lerner as belonging to a class of purchaser to which it did not belong as of May 15, 1973, and does not belong to now. [Emphasis supplied].

This phrasing suggests that Lerner's general allegations of overcharges were intended to stand along with their allegation of violations flowing from a change in class of purchaser status.

For the foregoing reasons the motion for summary judgment is denied.

Thereafter on October 28, 1981, ARCO filed a motion for reconsideration of the order of August 21, 1981, denying the original motion for summary judgment. In this motion for reconsideration, ARCO urged the District Court to reconsider because the order of August 21, 1981, did not rule on the question whether ARCO was entitled to a *partial* summary judgment with respect to any claim of Lerner based on placement of Lerner in a "class of purchaser". Thereafter, the District Court filed a memorandum "Decision" granting a partial summary judgment to ARCO. The Decision was as follows:

> Defendant moves for reconsideration of this Court's Order denying summary judgment, made and entered herein on August 21, 1981.
>
> Defendant seeks reconsideration only of that part of the Order which denied summary judgment on the class of purchaser base price claims. Defendant asserts that *Shell Oil v. Nelson Oil Co.,* 627 F.2d 228 (TECA 1980), *cert. denied,* [449 U.S. 1022] 101 S.Ct. 590 [66 L.Ed.2d 484] (1980), compels the granting of its motion, on the basis that the alleged misclassification of plaintiff's class of purchaser and the base price allegedly wrongfully charged occurred on February 1, 1974, and amounted to "challenged conduct" on the same order as that found in *Shell Oil, supra,* and that in consequence the three year statute of limitations ran prior to the filing of the instant case.

Defendant contends that there is no showing of the existence of a material triable issue of fact with respect to this issue, and that defendant is entitled to partial summary judgment as a matter of law.

In this Court's Order of which reconsideration is now sought, summary judgment was denied on the basis that on a motion such as this all reasonable inferences must be drawn favorably to the party opposing the motion; that the allegations of the complaint can be fairly said to include allegations of overcharges not necessarily dependent upon the "class of purchaser" in which plaintiff was allegedly placed and that summary judgment was for that reason denied.

*Shell Oil* was distinguished in that Order on the basis of defendant's perceived characterization of the complaint, which the Court found to be the "class of purchaser" issue. This Court indicated that the complaint can just as readily be characterized as an overcharge case, with the class of purchaser classification being resultant rather than causal. In other words this Court found in the context of the whole complaint that class of purchaser was not necessarily the "challenged conduct" demonstrated in the complaint.

The Court did not accept defendant's characterization of the complaint, and made no decision related to that isolated issue. Defendants now ask the Court to decide that issue.

Plaintiffs contend that challenged conduct occurred and separate causes of action accrued each time defendant sold gasoline to plaintiff at the cost which has been increased by .7 cent. It contends that each time defendant charged plaintiff an illegal price based on improper "class of purchaser" or base price, a new and distinct cause of action arose. Plaintiff cites a number of regulations in support of its position.

*Petroleum for Contractors, Inc. v. Mobil Oil Corporation,* 493 F.Supp. 320 (S.D. N.Y.1980), is also relied upon by plaintiff and is not helpful to it because it does not deal precisely with accrual of the cause of action, and to the extent that it does, the date of allegedly wrongful misclassification date is treated as the operative date. 493 F.Supp. at 328.

*Ashland Oil Company of California v. Union Oil Company of California,* 567 F.2d 984 (TECA 1977) is also relied upon by plaintiff and cannot be read as plaintiff reads it. There was a one year applicable statute of limitations in that case. Ashland alleged that it was placed in the wrong class of purchaser some two years before the action was filed. The challenged conduct ended more than one year before the suit was filed. The Court said:

> "Ashland commenced this action on March 23, 1977, more than a year after its claim accrued." p. 247.

This cannot be read as a holding as to the time of accrual of the cause of action but rather as an application of the statute of limitations of one year to the allegations appearing on the face of the complaint. In other words the Court was saying that the cause of action accrued outside the statute of limitations of one year. The case does not hold that the cause of action accrues upon the cessation of the challenged conduct.

Plaintiff relies upon a number of other cases, many from the antitrust field, and some decided in the Ninth Circuit. The aptness of many of those cases is sharply disputed by defendant, which cites other cases in the antitrust field which limit some of the cases cited by plaintiff, or are contrary holdings.

The controlling case is *Shell Oil, supra.*

While, as pointed out by plaintiff, the consideration of the question of accrual of causes of action by the Temporary Emergency Court of Appeals in *Shell Oil,* may have been "perfunctory" and the result of less than vigorous briefing by counsel (see n.7, p. 7, Memorandum in Opposition), it does constitute a square holding as to the accrual of causes of action where the challenged conduct appears on the face of the complaint.

In the instant case the amended complaint provides in part as follows:

First claim, p. 5, ln. 32, ¶ 5:

"Beginning on February 1, 1974, and continuing to the present, ARCO has violated the EPAA and the rules and regulations of the FEA and DOE by eliminating the .7 cent per gallon price differential between Lerner and the 'ex-Rocket' distributors, by charging Lerner the same prices charged to those distributors, and by effectively treating Lerner as belonging to a class of purchaser to which it did not belong as of May 15, 1973, and does not belong to now."

Thus, it appears from the quoted charging allegation that plaintiff expressly and specifically relies upon a theory predicated upon being allegedly placed in the wrong class of purchaser. It is apparent from a reading of the language that the allegation in question constitutes challenged conduct. The holding in *Shell Oil* requires a ruling that with respect to that issue the statute of limitation has run, and defendant is entitled to partial summary judgment as prayed. [Footnotes omitted.]

### Statement of District Judge Under 28 U.S.C. § 1292(b)

The foregoing memorandum "Decision" of the District Court was incorporated in a formal Order Granting Defendant's Motion for Partial Summary Judgment, filed July 16, 1982. This formal order included the following written statement of the District Judge made pursuant to 28 U.S.C. § 1292(b):

The undersigned judge is of opinion that this Order involves a controlling question of law as to which there is substantial ground for differences of opinion [and] that an immediate appeal from this Order as authorized by 28 U.S.C. § 1292(b) may materially advance the ultimate termination of this litigation.

This order of the District Judge granting the motion for a partial summary judgment was based on the amended complaint alone, although some materials in addition to the allegations of the amended complaint were available to the District Court in the form of deposition and document discovery cited by ARCO in "declarations" filed by ARCO (and mentioned in the Answer of ARCO to the petition herein), but not mentioned or relied on in the memorandum of the District Court granting the motion of ARCO for a partial summary judgment.

### The Applicable Statute and Federal Rule of Appellate Procedure

The statute under which petitioner Lerner seeks leave to appeal is 28 U.S.C. § 1292(b) which is as follows:

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The implementing Federal Rule of Appellate Procedure which governs petitions for leave to appeal under 28 U.S.C. § 1292(b) is Rule 5 of the Federal Rules of Appellate Procedure (F.R.A.P.) which is as follows:

(a) Petition for Permission to Appeal. An appeal from an interlocutory order containing the statement prescribed by 28 U.S.C. § 1292(b) may be sought by filing a petition for permission to appeal with the clerk of the court of appeals within 10 days after the entry of such order in the district court with proof of service on all other parties to the action in the district court. An order may be amended to include the prescribed statement at any

time, and permission to appeal may be sought within 10 days after entry of the order as amended.

(b) Content of Petition; Answer. The petition shall contain a statement of the facts necessary to an understanding of the controlling question of law determined by the order of the district court; a statement of the question itself; and a statement of the reasons why a substantial basis exists for a difference of opinion on the question and why an immediate appeal may materially advance the termination of the litigation. The petition shall include or have annexed thereto a copy of the order from which appeal is sought and of any findings of fact, conclusions of law and opinion relating thereto. Within 7 days after service of the petition an adverse party may file an answer in opposition. The application and answer shall be submitted without oral argument unless otherwise ordered.

(c) Form of Papers; Number of Copies. All papers may be typewritten. Three copies shall be filed with the original, but the court may require that additional copies be furnished.

(d) Grant of Permission; Cost Bond; Filing of Record. Within 10 days after the entry of an order granting permission to appeal the appellant shall (1) pay to the clerk of the district court the fees established by statute and the docket fee prescribed by the Judicial Conference of the United States and (2) file a bond for costs if required pursuant to Rule 7. The clerk of the district court shall notify the clerk of the court of appeals of the payment of the fees. Upon receipt of such notice the clerk of the court of appeals shall enter the appeal upon the docket. The record shall be transmitted and filed in accordance with Rules 11 and 12(b). A notice of appeal need not be filed.

28 U.S.C. § 1292(b) and Rule 5, F.R.A.P., are applicable to petitions for leave to appeal to this Court from interlocutory orders. Rule 1, General Rules of the Temporary Emergency Court of Appeals of the United States (TECA), providing that the F.R.A.P. generally govern the procedure in proceedings in the Temporary Emergency Court of Appeals; *Dyke v. Gulf Oil Corp.* (TECA 1979) 601 F.2d 557 at 559.

### Standards for Applying 28 U.S.C. § 1292(b)

■ The application of 28 U.S.C. § 1292(b) in the allowance or denial by a court of appeals of an appeal from an interlocutory order of a district court requires a two stage procedure.

The first stage is the statement in writing that the district judge, in making an order in a civil action not otherwise appealable under § 1292, is of the opinion that such order (a) involves a controlling question of law (b) as to which there is a substantial ground for difference of opinion and (c) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The second stage is granting or denying the petition by the court of appeals in the exercise of its unquestionable independent discretion. In exercising its discretion the court of appeals is not bound by the opinion of the district court, though it should give great weight thereto. 9 *Moore's Federal Practice* ¶ 110.22[3], [4]; 16 Wright & Miller, *Federal Practice and Procedure*, § 3951 at 369–370 note 4.

(In the absence of an affirmative statement under § 1292(b) by the district judge there is no interlocutory appeal allowable by a court of appeals.)

### The Contentions of the Parties

In his Petition for Leave to Appeal Lerner contends that the petition should be granted by this Court on the following grounds:

A. The order granting the motion of ARCO for a summary judgment "engenders several interrelated" controlling questions of law which are:

The ultimate question is:

(1) When does a cause of action accrue under the Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, the

Emergency Petroleum Allocation Act of 1973, 15 U.S.C. § 751 *et seq.* and the regulations promulgated thereunder?

The narrower questions presented by this case involve:

(2) Whether *Shell Oil Co. v. Nelson Oil Co.,* 627 F.2d 228 (TECA 1980), *cert. denied,* [449 U.S. 1022] 101 S.Ct. 591 [590, 66 L.Ed.2d 484] (1980), holds that a cause of action accrues one time only on the first date that challenged conduct occurs irrespective of whether the conduct is alleged to be repetitive or continuing;

(3) Whether the holding in *Shell Oil Co. v. Nelson Oil Co., supra,* is correct;

(4) What constitutes "challenged conduct";

(5) Whether *Shell Oil Co. v. Nelson Oil Company, supra,* governs actions involving the refiner price regulations (10 C.F.R. § 212.81 *et. seq.*); and

(6) Whether the district court correctly concluded that based on the face of the amended complaint any claim based on the determination of Lerner's class of purchaser and base price is time-barred.

B. There is a substantial difference of opinion regarding the order of the district court granting summary judgment because the order is based on *Shell Oil Co. v. Nelson Oil Co.,* 627 F.2d 228 (TECA), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980), "a case, which, on its face, is wrong."

C. That an immediate appeal, from the order granting the motion of ARCO for a partial summary judgment, may materially advance the ultimate termination of the litigation is implied but not expressly stated in the petition of Lerner for leave to appeal.

In its answer in opposition to the petition of Lerner for leave to appeal, ARCO contends that the leave to appeal should be denied because:

A. An interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is inappropriate since this is not an "exceptional case" where piecemeal appeal should be permitted.

B. There is no ground for difference of opinion concerning the order granting partial summary judgment since the district court applied the controlling precedent of TECA enunciated in *Shell Oil Co. v. Nelson Oil Co., supra* (TECA), 627 F.2d 228, *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980).

C. In emphasizing that the district court granted summary judgment "as to *part* of Lerner's first claim" ARCO submits that an immediate appeal from the order may not materially advance the ultimate termination of the litigation.

### DECISION DENYING LEAVE TO APPEAL

After full consideration of the contentions of the parties, the applicable statute, rules, judicial decisions and other authorities, we exercise our discretion to deny the petition for leave to appeal from the interlocutory order granting the motion of ARCO for a partial summary judgment.

### REASONS FOR DECISION

■ Our decision to deny this petition for leave to appeal is based on our conclusions (1) that the order granting the partial summary judgment does not involve a controlling question of law; and (2) that an immediate appeal from the interlocutory order may not materially advance the ultimate termination of the litigation.

#### Applicable Statutory and Judicial Standards

In the application of 28 U.S.C. § 1292(b) since its enactment in 1958, the courts have developed through statutory construction many definitive standards for application of § 1292(b). A comprehensive analysis and exposition of these judicially developed standards and authorities up to 1975 is found in a Note entitled *Interlocutory Appeals in the Federal Courts Under 28 U.S.C. 1292(b),* published in 88 *Harvard Law Review* 607, and cited hereafter as *Harvard Note.*

We deny the petition of Lerner for leave to appeal for the separate and related reasons that petitioner has not shown (a) the existence of a controlling question of law or (b) that an immediate appeal from the order granting a partial summary judgment on the pleadings may materially advance the ultimate termination of the litigation. It is unnecessary to determine whether there is a substantial ground for difference of opinion on the legal question determined by the District Court. For the purposes of this decision we assume that there is substantial ground for difference of opinion, and express no views on the correct determination of the legal question which is the subject of substantial difference of opinion and citation of authorities in the petition and answer filed herein.

### Existence of a Controlling Question of Law

As shown in the *Harvard Note, supra,* 88 *Harvard Law Review* 607 at 618 to 624, a substantial body of case law, sometimes disparate, has been developed in construction of the phrase "controlling question of law". Under any permissible definition of the phrase, a controlling question of law is not shown to exist in the action of the District Court in rendering a partial summary judgment.

The partial summary judgment was rendered on the face of the pleadings. The question of law decided does not meet the requirement that ". . . the order involve a clear-cut question of law, against a background of determined and immutable facts." 9 *Moore's Federal Practice* ¶ 110.-22[2]; Wright, *Law of Federal Courts* § 102 (3rd ed.), Note 53 at page 518. In pretrial or trial, after all possible amended pleadings and potential evidence are submitted and all theories of discovery explored, a judgment for or against the petitioner may be entered on the petitioner's claim in a manner that makes immaterial the issues determined by the partial summary judgment. The action of the District Court in refusing to enter a full summary judgment is evidence of a reservation of decision on other possible theories of recovery by petitioner Lerner.

The unusual number of collateral questions of law of which petitioner Lerner requests interlocutory review supports the view, expressed herein, that the question of law decided in granting the motion of ARCO for a partial summary judgment is not a controlling question of law.

### Material Advancement of Termination of Litigation

Further, we fail to find that an immediate appeal from the order entering the partial summary judgment may materially advance the ultimate disposition of the action. The partial summary judgment did not dispose of the liability of ARCO on the first claim for petitioner Lerner. The ruling was limited to one theory of the first claim, perceived by ARCO and the District Court. It is possible that the District Court may decide to submit the first claim of petitioner Lerner against ARCO on an additional theory or contention of petitioner even if the partial summary judgment should be vacated by this Court on interlocutory review. Some of the reported authorities on this issue are collected in the *Harvard Note, supra,* 88 *Harvard Law Review* 607 at pages 625 to 628. In this connection we note that many denials of interlocutory review on obvious grounds are not reported. See 16 Wright & Miller, *Federal Practice and Procedure* § 3931 at 177. In the *Harvard Note* the four situations contemplated by the sponsoring Judicial Conference of the United States, and presumably by Congress, in adopting § 1292(b) are summarized as follows (88 *Harvard Law Review* at 611, 612):

> In the hearings, four situations were identified where use of the interlocutory appeal procedure would be appropriate: (1) "cases where an [extended] accounting is necessary upon an adjudication of liability"; (2) "cases where a long trial would be necessary for the determination of liability or damages upon a decision overruling a defense going to the right to maintain the action"; (3) "cases involving third-party defendants where there

would be no reason for going on if they could not be held liable"; and (4) "cases of transfer of causes when it is claimed that the transfer is not authorized by law [because the transferee court lacks jurisdiction of the parties]." Each of these situations is one where immediate appeal could avoid an unnecessary trial. Even though the Act is not in terms limited to such situations, there is no indication in these examples, or in any of the statutory materials, that the goals of alleviating hardship and supervising lower courts were intended to be considered under the Act. Trial court certification was not viewed as an invitation to the trial judge to "certify" difficult questions of general applicability to the courts of appeals. [Footnotes omitted.]

The circumstances relied on in the petition for leave to appeal are not within any of the situations described in that quotation.

We have found it unnecessary to rely on, or to determine the applicability of the "exceptional case" requirement.

In the exercise of our discretion, for the reasons stated above, it is hereby

ORDERED that the Petition for Leave to Appeal of Lerner be, and it is hereby, denied.