The BANK OF NEW YORK, Plaintiff,

v.

Russell L. HOYT, et als, Defendants.

Civ. A. No. 84–0659–S.

United States District Court,
D. Rhode Island.

Nov. 19, 1985.

Winograd, Shine & Zacks, P.C., Allen P. Rubine, Moss Patashnik, Providence, for defendant Hoyt.

Boyajian, Coleman & Harrington, John Boyajian, Alden H. Harrington, Providence, and Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., John M. Connolly, Stephen R. Goldstein, Elizabeth B. Burnett, Jack G. Stern, Boston, Mass., for defendant Harris.

Letts, Quinn & Licht, P.C., Joseph DeAngelis, Robert D. Fine, and Levy, Goodman, Semonoff & Gorin, Providence, for defendant Finley.

Radcliffe L. Romeyn, Jr., pro se.

### Memorandum and Order

SELYA, District Judge.

By Opinion and Order previously filed in this matter, *Bank of New York v. Hoyt*, 617 F.Supp. 1304 (D.R.I.1985) (*BONY I*), this court struck the affirmative defenses of usury raised by certain defendants and dismissed various usury-based counter-claims. *Id.*, 617 F.Supp. at 1315. Among the defenses and counterclaims so annulled were those sponsored by the defendant Russell L. Hoyt. On October 10, 1985, Hoyt moved for an express direction for the entry of judgment against him vis-a-vis his affirmative defense and counterclaim, Fed.R.Civ.P. 54(b), or alternatively, to certify the same for interlocutory appeal under 28 U.S.C. § 1292(b). The plaintiff has objected.

### I.

As a threshold matter, the plaintiff urges that the motion is untimely under Fed.R.Civ.P. 54(b).[1] In support of that asseveration, the bank relies on *Schaefer v. First National Bank of Lincolnwood*, 465 F.2d 234 (7th Cir.1972) (per curiam). On rather bizarre facts, the Seventh Circuit held

> that as a general rule it is an abuse of discretion for a district judge to grant a motion for a Rule 54(b) order when the motion is filed more than thirty days after the entry of the adjudication to which it relates.

*Id.* at 236.

This court eschews any such inflexible criterion. Rule 54(b), unlike a myriad of other provisions in the civil rules, *e.g.*, Fed.R.Civ.P. 59(b), 59(e), 72(a), 74(a), contains no express temporal restrictions. To be sure, the longer an aggrieved party waits after receiving notice of the court's ruling, the less likely it will be—in the typical case—that he can persuade the nisi prius court that there is, in the language of the rule, "no just reason for delay." (After all, such thumb-twiddling is itself some evidence that the disappointed suitor consid-

---

1. The text of Rule Fed.R.Civ.P. 54(b) is as follows:

Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ers delay in seeking appellate review to be a tolerable circumstance.) Yet, though the seasonableness of an effort to obtain Rule 54(b) certification is certainly a factor to be weighed in the mix, it should not be accorded talismanic importance. In the absence of a fixed time limit for taking action, it seems prudent for the court to assess the timeliness of such an initiative on a case-by-case basis. *Cf. In re Giorgio*, 50 B.R. 327, 328–29 (D.C.D.R.I.1985) (discussing timeliness of petition for withdrawal under 28 U.S.C. § 157(d) (1984)). The court, therefore, treats the instant motion as timely.

## II

■ Insofar as the motion seeks entry of a final judgment on an affirmative defense, it represents a foredoomed attempt to squeeze a square peg into a round hole. Disposition of an affirmative defense is not a "final judgment" in any sense of the term, and no amount of rhetorical prestidigitation can make it so. In scrutinizing a Rule 54(b) application, the trial court must be ever mindful that

The District Court *cannot*, in the exercise of its discretion, treat as "final" that which is not "final" within the meaning of § 1291. But the District Court *may*, by the exercise of its discretion in the interest of sound judicial administration, release for appeal final decisions upon one or more, but less than all, claims in multiple claims actions.

*Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (emphasis original).

This principle has consistently been applied to defeat attempts to secure premature Rule 54(b) review of interim orders interdicting affirmative defenses. As the Fourth Circuit has held:

Under Rule 54(b) appeal can be taken from a judgment on one of a number of claims if the judge gives the proper certificate; but the judgment must finally dispose of a claim and not merely adjudicate a defense to a claim. ... [I]t is as well settled as anything can be that Rule

54(b) does not authorize appeal from a judgment with respect to a mere affirmative defense.

*Flynn & Emrich Co. v. Greenwood*, 242 F.2d 737, 741 (4th Cir.), *cert. denied*, 353 U.S. 976, 77 S.Ct. 1060, 1 L.Ed.2d 1137 (1957).

The Second Circuit is in accord. As Judge Clark wrote shortly after the adoption of the Federal Rules:

An order merely striking one of several defenses and allowing the action to continue for adjudication of the rest would seem as nearly interlocutory as any pleading ruling can ever be; and such has been the universal view, both before the adoption of the new civil rules, and since.

*Libbey-Owens-Ford Glass Co. v. Sylvania Industrial Corp.*, 154 F.2d 814, 814–15 (2d Cir.) (citations omitted), *cert. denied*, 328 U.S. 859, 66 S.Ct. 1353, 90 L.Ed. 1630 (1946). *See also Smith v. Benedict*, 279 F.2d 211, 213 (7th Cir.1960) (same).

Insofar as Hoyt's motion seeks to transform the sow's ear of a routine interlocutory adjudication anent an affirmative defense into the silk purse of a final judgment, it must be denied.

## III.

■ The counterclaim stands on a somewhat different footing. An order dismissing a counterclaim possesses the requisite finality, and, in appropriate circumstances, can constitute suitable grist for the Rule 54(b) mill. *E.g., Parker v. Wellborn*, 261 F.2d 767 (D.C.Cir.1958) (per curiam); *cf. In re Massachusetts Helicopter Airlines, Inc.*, 469 F.2d 439, 442 n. 4 (1st Cir.1972) (Rule 54(b) certification properly made as to judgment on primary complaint, notwithstanding that counterclaim had yet to be adjudicated). Such a result follows inexorably from the Court's holding in *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956) (counterclaims, whether permissive or compulsory, create "multiple claims" for the purpose of Rule 54(b)). "Where an actual counter-

claim is pleaded, ... there is then a multiple claims action." *TMA Fund, Inc. v. Biever*, 520 F.2d 639, 641 (3d Cir.1975). And, if there are "multiple claims," then a dispositive adjudication of any one of them can arguably be forwarded to the court of appeals despite the pendency of the remaining (unresolved) claims.

The fact that the court can grant the requisite Rule 54(b) certificate as to the dismissed counterclaim is not tantamount, however, to a determination that it should do so. There is a long-settled policy against piecemeal disposition of litigation, Rule 54(b) notwithstanding. *Pahlavi v. Palandjian*, 744 F.2d 902, 903 (1st Cir. 1984); *Makuc v. American Honda Motor Co., Inc.*, 692 F.2d 172, 173 (1st Cir.1982) (per curiam); *Ryan v. Occidental Petroleum Corp.*, 577 F.2d 298, 302 (5th Cir.1978); *In re Bromley-Heath Modernization Committee*, 448 F.2d 1271 (1st Cir.1971) (per curiam) ("Clearly the purpose of the rule is not to encourage broadly piecemeal appeals just because an appellant may be in a hurry."). It has been widely recognized that orders under Fed.R.Civ.P. 54(b) "should not be entered routinely or as a courtesy or accommodation to counsel." *Panichella v. Pennsylvania Railroad Co.*, 252 F.2d 452, 455 (3d Cir.1958), *cert. denied*, 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960). *See, e.g., Great American Trading Corp. v. I.C.P. Cocoa, Inc.*, 629 F.2d 1282, 1286 (7th Cir.1980); *Page v. Preisser*, 585 F.2d 336, 339 (8th Cir.1978). Thus, entry of final judgment ought not lightly to be undertaken, particularly when the primary action remains pending as to all parties in the district court. *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir.1978). The rule is designed to be used where the problem and circumstances are of an "exceptional nature," *Page*, 585 F.2d at 339, in order to avoid some perceptible "danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir.1968). As the advisory committee notes make plain, the prophylaxis of the rule should be reserved for the "infrequent harsh case." *See Panichella*, 252 F.2d at 455.

■ This is not such a situation. The issue of usury *vel non* is inextricably intertwined with the other (conflicting) allegations concerning the status of the loan which Hoyt (among others) guaranteed.[2] None of the other defendants have joined in Hoyt's motion, although at least two of them are identically affected by the court's August 28, 1985 decision. *See BONY I*, 617 F.Supp. at 1306 n. 1. The case as a whole is rapidly approaching trial. As noted earlier, the movant has not exhibited particular diligence in pressing to uncap the unguent of Rule 54(b). A plethora of other issues remain, which must yet be adjudicated between Hoyt and the bank. Perhaps most telling, the motion papers in no way suggest any unusual hardship or injustice which would be visited upon Hoyt should he wait his turn and begin his climb up the appellate ladder (if such an ascent proves necessary) after the trial has been completed. In the absence of any exceptional circumstances, the course of prudence and of the orderly management of litigation is to avoid the essentially fragmentary appeal which the movant invites.

Inasmuch as Hoyt has shown no convincing reason for the court to detour around standard procedures in his case, the motion for Rule 54(b) certification must be denied. Though it would doubtless be convenient for the movant to have the appellate court pass upon his usury argument in advance of trial on the merits, the caselaw forbids accommodating one party in such a fashion when to do so would run counter both to the easily perceived needs of his adversary and to the interests of the justice system itself.

---

**2.** The interleaving of the counterclaim at issue vis-a-vis the primary complaint is readily apparent from the facts of the case. Inasmuch as an overview of the action was explicated in some detail in *BONY I*, 617 F.Supp. at 1306–07, it is unnecessary to dwell on the factual setting in this rescript.

## IV.

Hoyt's final request is that this court consider certification of the questions adjudicated in *BONY I* for interlocutory appeal under 28 U.S.C. § 1292(b). That statute provides in pertinent part as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order....

It is apodictic that interlocutory certification under § 1292(b) "should be used sparingly and only in exceptional circumstances, and where the proposed intermediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." *McGillicuddy v. Clements*, 746 F.2d 76, 76 n. 1 (1st Cir. 1984) (citation omitted). *See also In re Heddendorf*, 263 F.2d 887, 888–89 (1st Cir. 1959) (same).

■ There are two integers in the § 1292(b) statutory equation—(i) the presence of "a controlling question of law," the resolution of which is fairly debatable, and (ii) the prospect that early determination of that question will likely "materially advance the ultimate termination of the litigation." Both of these elements must be present to unleash the anodyne of the statute. *See, e.g., Control Data Corp. v. International Business Machines Corp.*, 421 F.2d 323, 325 (8th Cir.1970); *In re Heddendorf*, 263 F.2d at 889.

In the case at bar, neither factor has been established. Though at least one of the issues before this court in *BONY I* presented thorny questions "as to which there is substantial ground for difference of opinion," *see BONY I*, 617 F.Supp. at 1309–10, that issue cannot be viewed as "controlling." A brief explanation is in order.

The parties dispute the applicability of the interest ceiling limned by R.I.Gen.Laws §§ 6-26-2, 4 to this type of loan. *See BONY I*, 617 F.Supp. at 1307. The defendants assert that the interest charged and collected by the plaintiff exceeded this rate at various points in time. *See id.* The bank has steadfastly denied that this is so (though conceding, for purposes of its motion for partial summary judgment only, that the court could assume the contrary). *See* 617 F.Supp. at 1306–07. As a matter of fact, the bank continues to maintain that it has neither charged nor collected interest on the note over and above that permitted under the state limitation.

■ The core question analyzed in *BONY I*—whether the Rhode Island usury rate was in this instance preempted by federal law—is therefore not a "controlling" one within the purview of § 1292(b). Even if the appellate court were to take a different view of the preemptive effect *vel non* of § 501 of the Depository Institutions Deregulatory and Monetary Control Act of 1980, Pub.L. No. 96–221, Title V, § 501, 94 Stat. 132, 161–63 (1980), the bank's liability (if any) on the counterclaim would remain uncertain, and trial would be necessary to determine the merit of Hoyt's contention. So postured, this case is therefore similar to *Lerner v. Atlantic Richfield Co.*, 690 F.2d 203 (Temp.Emer.Ct.App.1982), where the Temporary Emergency Court of Appeals denied a petition for leave to appeal questions raised by partial summary judgment because "a judgment for or against the petitioner may be entered on the petitioner's claim in a manner that makes immaterial the issues determined by the partial summary judgment." *Id.* at 211.

■ Moreover, a legal question cannot be termed "controlling" if litigation would be conducted in much the same manner regardless of the disposition of the question upon appeal. " '[C]ontrolling' means serious to the conduct of the litigation, either practically or legally.... And on the practical level, saving of time of the

district court and of expense to the litigants was deemed by the sponsors to be a highly relevant factor." *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.) (citations omitted), *cert. denied*, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). In the instant case, an intermediate appeal would likely save neither time nor expense. (To the contrary, it would doubly burden both the appeals court and the litigants, and would unjustifiably forestall the commencement of trial.) The contours of the trial will be much the same regardless of the disposition of the usury issue. Interim review of this court's holding anent the counterclaim and the affirmative defense would not foreseeably affect "the scope of evidence in a complex case," *Garner v. Wolfinbarger*, 430 F.2d 1093, 1097 (5th Cir. 1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), or "the scope of discovery procedure, the length and complexity of ultimate trial, and the expenditure of time, money and effort which [this case] will engender." *Atlantic City Electric Co. v. General Electric Co.*, 207 F.Supp. 613, 620 (S.D.N.Y.), *aff'd*, 312 F.2d 236 (2d Cir.1962), *cert. denied*, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963).

The second furculum of the § 1292(b) test is equally inhospitable to Hoyt's impetration. It is not likely that early disposition of the usury question will "materially advance the ultimate termination of the litigation," as required by the language of the statute. While

> the party seeking certification need not demonstrate that the litigation will *certainly* be expedited by interlocutory appeal[,] ... [T]he moving party should come forward with something more than mere conjecture in support of his claim that certification may save the court and the parties substantial time and expense.

*In re Magic Marker Securities Litigation*, 472 F.Supp. 436, 438–39 (E.D.Pa.1979) (emphasis original).

The movant has wholly failed to write a script of the genre which *Magic Marker* correctly demands. He has neither shown

that certification will expedite disposition of the other claims and counterclaims, nor tendered any infrangible basis for suspecting that such an outcome would likely ensue. As indicated above, it seems inescapable that substantially the same evidence will be aired at trial in any event. And, that circumstance alone frequently interdicts a § 1292(b) initiative. *See Savodnik v. Korvettes, Inc.*, 489 F.Supp. 1010, 1012 (E.D.N.Y.1980); *McNulty v. Borden, Inc.*, 474 F.Supp. 1111, 1120–22 (E.D.Pa.1979); *SEC v. Penn Central Co.*, 450 F.Supp. 908, 918 (E.D.Pa.1978).

Common sense teaches that, if employed in a casual or desultory fashion, interlocutory appeal may not only fail materially to advance the termination of a case but may prolong it. The cure prescribed by an over-eager petitioner may well produce symptomatology far more virulent than any which would otherwise infect the record. The caselaw recognizes such hazards, and counsels toward restraint where (as here) such auxetic and/or deleterious results are in prospect. *See, e.g., Atlantic City Electric Co. v. General Electric Co.*, 337 F.2d 844, 845 (2d Cir.1964); *First Delaware Valley Citizens Television, Inc. v. CBS, Inc.*, 398 F.Supp. 917, 925 (E.D.Pa.1975).[3] Particularly where cases are close to trial, courts are understandably reticent to grant interlocutory certification. *E.g., Lorentz v. Westinghouse Electric Corp.*, 472 F.Supp. 954, 956 (W.D.Pa.1979); *State Teachers Retirement Board v. Fluor Corp.*, 84 F.R.D. 38, 39 (S.D.N.Y.1979); *Gross v. McDonald*, 354 F.Supp. 378, 383 (E.D.Pa. 1973).

As with the entry of a final judgment in a partially-resolved action pursuant to Rule 54(b), *see* text *ante* at Part III, a motion for certification pursuant to § 1292(b) must be granted sparingly. *McGillicuddy v. Clements*, 746 F.2d at 76 n. 1. Piecemeal review is generally discouraged—and for good reason. *See Shakur v. Malcolm*, 525 F.2d 1144, 1147 (2d Cir.1975); *Clark v. Kraftco Corp.*, 447

---

**3.** The hoary parable of the tortoise and the hare is not inapposite in such precincts.

F.2d 933, 936 (2d Cir.1971); *Hollander v. Clay*, 420 F.Supp. 853, 859 (D.D.C.1976). As the legislative history indicates,

the appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge.

S.Rep. 2434, 85th Cong., 2d Sess., 1958, *reprinted in* 1958 U.S.Code Cong. & Admin.News 5255, 5257.

The movant has the obligation of showing that the § 1292(b) criteria are met. *See Fisons Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir.), *cert. denied*, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972) ("In every application under § 1292(b) the appellant has the burden of persuading the court ... that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after entry of a final judgment."). And, the burden is a heavy one. An interlocutory appeal is a tool which should be employed with surgical precision; the nature of the issue vis-a-vis the case as a whole, and the timing and the juxtaposition of the attendant circumstances, must conduce to its use. In the case at bar, no such propinquity exists. Resorting to the prophylaxis of 28 U.S.C. § 1292(b) here would do little more than insert a monkey wrench into the machinery of the ongoing litigation. Hoyt has entirely failed to demonstrate that the ingredients reasonably necessary to catalyze the special alchemy of intermediate review are extant.

### V.

Although the preemption issue which this court decided in *BONY. I* is not free from doubt, it is ofttimes necessary to live with uncertainty in this troubled world. Inasmuch as (i) there are no exceptional circumstances present here, (ii) the preemption question is bound up with a variety of other issues (factual and legal) in the case, and (iii) there are—and will in any event be—a myriad of other contentions to be tried as between Hoyt and the bank, there is just cause to delay the entry of final judgment on Hoyt's counterclaim under Fed.R.Civ.P. 54(b). In much the same vein,

since certification of the designated issue for interim appellate perscrutation will neither control the outcome of the litigation nor materially advance its disposition, there is no adequate reason to invoke 28 U.S.C. § 1292(b) at this stage of the proceedings.

The alternative motion for entry of a final judgment, Fed.R.Civ.P. 54(b), or for interlocutory certification under 28 U.S.C. § 1292(b), is in all respects meritless. It must be, and it hereby is, denied.

*So ordered.*