Professor Harriet SPIEGEL,
Plaintiff, Appellant,

v.

The TRUSTEES OF TUFTS COLLEGE,
Defendant, Appellee.

No. 87–1808.

United States Court of Appeals,
First Circuit.

Heard Jan. 8, 1988.

Decided March 30, 1988.

Dahlia C. Rudavsky with whom Kathryn M. Noonan and McDonald, Noonan & Kaplan, Newton, Mass., were on brief, for plaintiff, appellant.

Alan D. Rose with whom Jennifer R. Seton, John M. Griffin and Nutter, McClennen & Fish, Boston, Mass., were on brief, for defendant, appellee.

Before CAMPBELL, Chief Judge, and TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

A disappointed faculty member, Harriet Spiegel, sued the trustees of Tufts College in the United States District Court for the District of Massachusetts following rejection of her tenure application. The district court dismissed most—but not all—of her statements of claim without requiring defendants to answer, and thereafter authorized a partial judgment in Tufts' favor under Fed.R.Civ.P. 54(b).[1] Because we

---

1. Inasmuch as Rule 54(b) lies at the core of the dispositive legal issue, we set forth a portion of the text:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express

conclude that the judgment was prematurely entered, we dismiss the appeal.

## I. BACKGROUND

This case's voyage to our shores can be charted from three distinct coigns of vantage. We begin with the relevant facts, then trace the theories upon which suit was grounded, and end Part I with a roadmap of the litigation's travel.

A. *The Facts.* Inasmuch as this proceeding follows upon the heels of a dismissal under Fed.R.Civ.P. Rule 12(b)(6), we accept the well-pleaded factual averments of the complaint, eschewing, however, reliance on bald assertions or patently untenable conclusions. *Chongris v. Board of Appeals,* 811 F.2d 36, 37 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). Not including proposed Count V, *see infra* note 2, the complaint comprises twenty pages of text, divided into seventy-six numbered paragraphs, plus documentary attachments. It relates an unhappy tale of dashed hopes and frustrated aspirations. We refine the story to bare essence.

Spiegel was hired by Tufts in the late 1970s for an advertised tenure-track faculty position. Her first posting was as an assistant professor of English for a one-year term (September 1, 1979 through August 31, 1980). This appointment was then renewed for a three-year term expiring August 31, 1983. Among her other duties, she had special responsibility throughout for a remedial reading program.

At Tufts, tenure-track faculty customarily make formal application for tenure (and concomitantly, promotion to the rank of associate professor) during the sixth year of full-time service. Before then, candidates often undergo a mid-tenure review (MTR). The MTR is designed to evaluate the faculty member's overall performance and to inform her of progress (or lack of progress) toward the attainment of tenure.

Spiegel underwent an MTR during the 1982–83 academic year. She alleges that the results were favorable. In any event, she was offered and accepted a further three-year appointment, running through August 31, 1986. She was still devoting approximately half of her time to remedial reading.

Around late 1985, plaintiff submitted her formal tenure application. The departmental vote was inconclusive. The ten tenured members of the English department split five and five on the question of whether Spiegel deserved permanent status. The college's Committee on Tenure and Promotion (Committee), following a subcommittee recommendation, eventually voted to deny tenure. Spiegel then petitioned the administration, which refused to intervene. On June 30, 1986, the Dean notified Spiegel that tenure had been refused. Her contract would be extended for one additional year but not renewed beyond August 31, 1987.

B. *The Statements of Claim.* Plaintiff's complaint was framed in four counts. The gravamen of each follows:

1. Count I (breach of contract)—Tufts failed to evaluate plaintiff for tenure purposes as advertised by the college in its faculty handbook and kindred documentation.

2. Count II (breach of contract)—Tufts failed to evaluate plaintiff for tenure purposes as she had been promised, especially with respect to the dual nature of her work "in two distinct areas, the remedial writing program and traditional scholarship." Complaint at ¶ 50.

3. Count III (misrepresentation)—Tufts falsely represented both (a) the weight to be given to different components of Spiegel's work, and (b) the acceptability of certain of her endeavors vis-a-vis tenure consideration. These misrepresentations were

determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated,

which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties,.... Fed.R.Civ.P. 54(b).

said to have occurred when she was hired, during her MTR, and at other times.[2]

4. Count IV (civil rights violations)— Tufts denied plaintiff tenure in retribution for her exercise of protected rights, "including but not limited to her rights to free speech." Complaint at ¶ 74. The protected activity, plaintiff alleged, comprised having "spoken out against the practices of [the English] department chairperson," *id.* at ¶ 69, and having opposed the tenure application of one Jonathan Wilson "on the grounds that Wilson did not meet the English Department's affirmative action needs." *Id.* at ¶ 70. Plaintiff claimed the retaliatory action trammelled rights secured to her by the Constitution and laws of the United States and of Massachusetts, including Mass.Gen.L. c. 12, § 11I and, presumably, the First Amendment.

C. *Travel of the Case.* Once the complaint was served, Tufts moved to dismiss it for failure to state any legally cognizable claim. The district court granted the motion as to the first three counts, *Spiegel v. Trustees of Tufts College,* C.A. No. 86–3330–S, slip op. at 5–12 (D.Mass. July 30, 1987) (unpublished), but overruled it as to Count IV. *Id.* at 12–17. The court also repulsed the effort to amend the pleadings, which was the functional equivalent of dismissing proposed Count V. *See supra* note 2. Plaintiff thereupon moved under Rule 54(b) for entry of judgment on the matters decided adversely to her. The district court, in a cryptic footnote order, allowed the motion. As for the reasons which underlay the grant of Rule 54(b) certification, we can only speculate. The district judge wrote but a single sentence, which we quote in *haec verba:*

Allowed, 8/31/87, there being no just cause for delay.

**2.** While the action was still pending, Spiegel moved to add a (fifth) count, sounding in negligent misrepresentation. Tufts objected. The district court denied this motion when deciding the Rule 12(b)(6) motion. The court described the amendment as futile because proposed Count V "would not survive a motion to dismiss." *Spiegel v. Trustees of Tufts College,* C.A. No. 86–3330–S, slip op. at 18 (D.Mass. July 30, 1987) (unpublished) [available on WESTLAW, 1987 WL 15874]. Inasmuch as plaintiff ac-

## II. BATTLEGROUND: THE RULE 54(b) STANDARD

█ Fed.R.Civ.P. 54(b) permits the entry of judgment, and thus an appeal, on fewer than all the claims in a multi-claim action. Yet Rule 54(b) notwithstanding, there is a long-settled and prudential policy against the scattershot disposition of litigation. *Pahlavi v. Palandjian,* 744 F.2d 902, 903 (1st Cir.1984); *Makuc v. American Honda Motor Co.,* 692 F.2d 172, 173 (1st Cir.1982) (per curiam); *Bank of New York v. Hoyt,* 108 F.R.D. 184, 187 (D.R.I.1985). It follows, then, that entry of judgment under the rule should not be indulged as a matter of routine or as a magnanimous accommodation to lawyers or litigants. *Santa Maria v. Owens-Illinois, Inc.,* 808 F.2d 848, 854 (1st Cir.1986); *Panichella v. Pennsylvania R.R. Co.,* 252 F.2d 452, 455 (3d Cir. 1958). "Clearly the purpose of the rule is not to encourage broadly piecemeal appeals just because an appellant may be in a hurry." *In re Bromley-Heath Modernization Committee,* 448 F.2d 1271, 1271 (1st Cir.1971) (per curiam). We agree with Judge (now Justice) Kennedy that:

Judgments under Rule 54(b) must be reserved for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties.

*Morrison-Knudsen Co. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981).

█ When considering the wisdom of Rule 54(b) certification in a given case, the trial court must first assess the finality of the disputed ruling. *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1,

knowledged in her motion to amend that proffered Count V "rests on the same body of facts" as Count III, and the district court noted that the new initiative failed "for largely the same reasons that Count III fails," *id.* at 18, we see no need to wind our way through a procedural labyrinth. As did the district court in its Rule 54(b) order, we treat proposed Count V as part and parcel of Count III and, thus, avoid the necessity of dealing separately with the motion to amend.

7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980); *United States General, Inc. v. Albert,* 792 F.2d 678, 680–81 (7th Cir.1986); *Bank of New York,* 108 F.R.D. at 186. If the ruling lacks the necessary finality, the application must fail. As the Court has said, "[t]he District Court *cannot,* in the exercise of its discretion, treat as 'final' that which is not 'final' *within the meaning of* [28 U.S.C.] § 1291." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (emphasis in original). As an adjunct of this inquiry, of course, it must be shown that the ruling, at a bare minimum, disposes fully "of at least a single substantive claim." *Acha v. Beame,* 570 F.2d 57, 62 (2d Cir.1978).

█ Once the finality hurdle has been cleared, the district court must determine whether, in the idiom of the rule, "there is no just reason for delay" in entering judgment. Fed.R.Civ.P. 54(b). The court's role becomes that of a "dispatcher," *Sears, Roebuck,* 351 U.S. at 435, 76 S.Ct. at 900, exercising its discretion to decide which "final" decisions in a multi-claim action should be sent upstairs immediately and which withheld pending resolution of the entire controversy in the district court. *See Pahlavi,* 744 F.2d at 904. The process, tilted from the start against fragmentation of appeals, is necessarily case-specific. It entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances.[3] If, in consequence of this examination, the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily make specific findings setting forth the reasons for its order. *Knight v. Mills,* 836 F.2d 659, 661 n. 2 (1st Cir.1987); *Santa Maria,* 808 F.2d at 854–55; *Pahlavi,* 744 F.2d at 904–05.[4] Doing so, we hasten to add, serves a twofold purpose: it helps the district judge to sort out and weigh the competing considerations in his own mind, and it permits the appellate court effectively to review the ruling.

█ When and if the district court acts affirmatively under Rule 54(b) and an immediate appeal ensues, we must survey the legal landscape whether or not the Rule 54(b) order has been challenged by any of the litigants. Because the issue implicates the scope of our appellate jurisdiction, we are duty bound to take it up *sua sponte. See United States General,* 792 F.2d at 680; *Landry v. G.B.A.,* 762 F.2d 462, 463 (5th Cir.1985) (per curiam).

█ Our role requires, first, that we determine for ourselves whether the judgment has the requisite aspects of finality. *Morrison–Knudsen Co.,* 655 F.2d at 965. If so, we then "scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units." *Pahlavi,* 744 F.2d at 904 n. 5 (quoting *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466). It is only when the case has survived these preliminaries that we may proceed to scan the trial judge's "assessment of the equities." *Id.* If the district

---

**3.** Although the integers which comprise this calculus will vary from case to case, we note that a general compendium, helpful as a guide, has been set forth in *Allis–Chalmers Corp. v. Philadelphia Electric Co.,* 521 F.2d 360, 364 (3d Cir. 1975).

**4.** In *Pahlavi,* we abjured imposition of a "rigid requirement on the district court to prepare a written statement in every case to justify its Rule 54(b) actions." 774 F.2d at 905. Our experience since then teaches us that some further insight into our expectations might prove helpful. A statement will, of course, be unnecessary where the district court *denies* Rule 54(b) certification. Where the district judge is prepared affirmatively to certify that there is "no just reason for delay," however, a concise list of reasons will likely be needed (save only in those infrequent instances where compelling considerations are self-evident on the face of the record). *See Knight,* 836 F.2d at 661 n. 2 (requirement that findings be catalogued should be bypassed but "sparingly"); *Santa Maria,* 808 F.2d at 854 ("essential" that district court articulate factors considered and reasoning in granting Rule 54(b) certification); *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 286 (2d Cir.1974) ("brief reasoned statement" by trial court in support of affirmative exercise of Rule 54(b) discretion mandatory "where the justification for the certificate is not apparent").

court has fulfilled its responsibility of enlightening us as to the basis for certification—if the court has specified "those factors upon which it relied in granting certification and, thereby, to furnish us with the benefits of its analysis in marshalling the relevant factors," *Knight*, 836 F.2d at 661 n. 2 (quoting *Allis–Chalmers*, 521 F.2d at 366)—then we give "substantial deference" to the court's exercise of its discretion. *Pahlavi*, 744 F.2d at 904 n. 5; *Morrison–Knudsen*, 655 F.2d at 965. But where the nisi prius court has failed in that task, the occasion for deference disappears. *See Solomon v. Aetna Life Ins. Co.*, 782 F.2d 58, 62 (6th Cir.1986) ("any deference due the district court's Rule 54(b) order is nullified" by absence of specific findings).[5]

## III. FOREGROUND

■ We assume without deciding that the first three counts of plaintiff's complaint state one or more "claims" separate and distinct from the fourth count, and that the dismissal therefore possessed the necessary finality to permit the district court to consider allowing an early appeal.[6] On that assumption, we turn to an assessment of the interrelationship of the dismissed claims and the claim yet pending below. Because the certification was bereft of any clue as to the district judge's reasoning, we could merely vacate the order and remand for a fuller evaluation, a course which we reserve the right to adopt should similarly deficient Rule 54(b) certificates come to our attention in the future. Yet because we and the parties have invested considerable time in a full-dress hearing of this appeal, and because the nexus between the dismissed counts and the surviving count is particularly plain, we eschew that option presently and cut directly to the chase. Because no findings were made below, however, we scrutinize the juxtaposition of the claims *de novo*.

■ In the first place, we remark the obvious: notwithstanding the order of dismissal, the action remains pending for trial in the district court as to *all* of the parties. This circumstance alone counsels hesitation in the use of Rule 54(b). *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978); *Bank of New York*, 108 F.R.D. at 187. It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below.

■ The overlap does not end with the parties' identities. The relief sought in various of the counts is much the same. Count IV, which remains unresolved in the district court, prays for three major forms of redress. First and foremost, it asks that Tufts be ordered to grant Spiegel a tenured appointment. That prayer is replicated in Counts I and II. Second, Count IV prays for money damages. A similar prayer festoons Count III. And last, Count IV prays for costs and counsel fees, as does Count III. This is redundancy of a highly significant sort. Should Spiegel prevail on Count

5. We do not imply that the responsibility for such findings should be borne by the district court, unaided. A party who seeks the special dispensation which Rule 54(b) envisions has an obligation, at the very least, to point out the requirement and to ask that the court, should it grant the request, make a brief but particularized statement of its reasons. In this case, plaintiff failed to take this rudimentary precaution.

6. The question, we think, is far from clear. The denial of tenure lay at the heart of all of the counts. In a sense, plaintiff merely set out alternate grounds for relief, each of which arose out of the same aggregate of operative facts. We agree with the Fifth Circuit that true multiplicity of claims—an essential ingredient for a final order within the purview of Rule 54(b)— does not exist where a plaintiff "merely presents alternative theories ... by which the same set of facts might give rise to a single liability." *Schexnaydre v. Travelers Ins. Co.*, 527 F.2d 855, 856 (5th Cir.1976) (per curiam). *See also Hasbrouck v. Sheet Metal Workers Local 232*, 586 F.2d 691, 694 (9th Cir.1978); *Backus Plywood Corp. v. Commercial Decal, Inc.*, 317 F.2d 339, 341 (2d Cir.), *cert. denied*, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963); *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961). The mere happenstance that a plaintiff chooses, as here, to organize her complaint into separate "counts" or "statements of claim" can make no real difference. Federal jurisdiction "cannot be manipulated by the simple expedient of creative labelling." *Royal v. Leading Edge Products, Inc.*, 833 F.2d 1, 5 (1st Cir.1987) (quoting *Ferris v. General Dynamics, Inc.*, 645 F.Supp. 1354, 1358 (D.R.I.1986)).

IV—and we intimate no view of the matter—she might well have her tenure, her monetary balm, and payment for her litigation expenses. The first three statements of claim would be largely (if not entirely) mooted and the need for appellate review would vanish. Appellate courts, understandably, have treated such a possibility as a major negative in the Rule 54(b) equation. *See, e.g., United States General,* 792 F.2d at 681 n. 3; *Brunswick Corp.,* 582 F.2d at 184–85; *Allis–Chalmers,* 521 F.2d at 364; *Panichella,* 252 F.2d at 455.

More important still, our independent review of the pleadings reveals substantial further imbrication between the dismissed counts and the surviving count. The common denominator of all of the counts is Spiegel's contention that she was wrongfully denied tenure. To be sure, she posits an assortment of possible reasons for the tenure denial. *Cf.* Fed.R.Civ.P. 8(e)(2) (party "may set forth two or more statements of a claim or defense alternately or hypothetically ... regardless of consistency"). But those possibilities—Tufts did not evaluate her for tenure as warranted in the faculty handbook (Count I) or as promised when she was hired (Count II), Tufts misrepresented various of the criteria germane to tenure consideration both at hire and during the MTR (Count III), Tufts inequitably denied her tenure because she was too outspoken (Count IV)—all stem from the same overall series of events. The adjudicated and unadjudicated claims alike ask the same brace of questions: did Spiegel receive a proper and fair tenure evaluation? And if not, why not?

The factual underpinnings of the adjudicated and unadjudicated counts are also inextricably intertwined. Count IV incorporates within itself each and all of the factual averments of the first three counts. *See* Complaint at ¶ 67. The protected speech for which plaintiff claims unjustly to have been penalized (by denial of tenure) is alleged to have occurred "[o]ver the course of her service at Tufts...." *Id.* at ¶ 69. Indeed, Count IV details specific incidents said to have taken place over a span ranging from 1982 to the time of the tenure denial (some four years later).

Throughout the complaint, it is insinuated that the principal villains of the piece are the five faculty members within the English department who opposed plaintiff's tenure. The dismissed counts portray their criticisms of Spiegel's credentials as lacking substance or as ignoring proper criteria. The surviving count denounces these selfsame criticisms as pretextual. All of the claim statements appear to implicate much the same evidence—and the legal issues can scarcely be viewed in isolation from each other. After all, whether or not an academician employed the proper criteria in evaluating a tenure application, or voted against it without any justifiable basis, may tell much about whether the evaluator's criticism was pretextual.

From what we have stated to this point, we believe it to be evident that the dismissed claims and the pending claim stem from essentially the same factual averments. A similarity of either legal or factual issues (or both) militates strongly against invocation of Rule 54(b). *See Solomon,* 782 F.2d at 62; *Morrison–Knudsen,* 655 F.2d at 965; *cf. Pahlavi,* 744 F.2d at 905 (if claims "closely related" to a sufficient degree, there is usually "just reason for delay" in entering judgment). It does not strike us as betokening sound judicial administration for an appellate court and a trial court to be simultaneously passing upon different legal theories in a situation involving the same parties and, basically, the same facts. Nor does a thesis which encourages such an awkward posture to develop strike us as a sensible construction of Fed.R.Civ.P. 54(b).

We spy no substantial countervailing considerations on the surface of this record. Where, as here, the dismissed and surviving claims are interlocking, only "unusual and compelling circumstances ... [can] dictate[ ] entry of an early, separate judgment" on the dismissed part of the case. *Morrison–Knudsen,* 655 F.2d at 966. Nothing in the papers before us suggests a pressing, exceptional need for immediate appellate intervention, or grave injustice of the sort remediable only by allowing an appeal to be taken forthwith, or

dire hardship of a unique kind. The hypothetical portrait of additional trials painted by plaintiff looks to us to be not only speculative, but sophistic. Virtually *any* interlocutory appeal from a dispositive ruling said to be erroneous contains the potential for requiring a retrial. Moreover, interpretations of Rule 54(b) must take into account systemic effects as well as individualized ones. To entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might* expedite a particular appellant's case would defoliate Rule 54(b)'s protective copse. This would leave the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expenses. The path, we think, should not be so unobstructed.

In sum, the interleaving of adjudicated and unadjudicated counts in this case is such that permitting a judgment to enter was plainly premature. There has been no demonstration whatever, in Justice Kennedy's phrase, that "the costs and risks of multiplying the ... proceedings and of overcrowding the appellate docket are outbalanced" by any combination of properly cognizable factors. *Morrison–Knudsen,* 655 F.2d at 965. This appeal was convenient for the parties, nothing more.

## IV. CONCLUSION

We need go no further. We believe that Rule 54(b) was not meant to animate essentially fragmentary proceedings or to be employed in the absence of sufficiently compelling circumstances. The present case, as we see it, does not pass muster. The "dispatcher," *see supra* at 43, should have flagged down the plaintiff's attempt to appeal out of season.[7]

Because the Rule 54(b) certification was improvidently granted, we have no jurisdiction to consider the merits of the order dismissing Counts I, II, and III or the order denying leave to add proposed Count V. The appeal will be dismissed and the cause remanded with instructions to the district court to vacate its August 31, 1987 order.

*Appeal dismissed. Cause remanded for further proceedings consistent with this opinion. No costs.*

---

7. There are cases involving a "controlling question of law" where intermediate appellate review would "materially advance the ultimate termination of the litigation...." 28 U.S.C. § 1292(b). Under that statute, the strictures of Rule 54(b) do not apply. Yet section 1292(b) has a regimen of its own. *See, e.g., Bank of New York,* 108 F.R.D. at 188–90. One aspect of that regimen is that "the mechanism permits the Court of Appeals to protect its docket by determining for itself whether to accept the issue for review." *Morrison–Knudsen,* 655 F.2d at 966. We fully agree with the Ninth Circuit that "[t]his discretion in the Court of Appeals should not be evaded by the *device of an inappropriate entry of judgment* by the district court under Rule 54(b)." *Id.*