**STATE STREET BANK & TRUST COMPANY, Plaintiff, Appellee,**

v.

**BROCKRIM, INC., Defendant, Appellant.**

No. 95–2345.

United States Court of Appeals, First Circuit.

Heard May 9, 1996.

Decided July 8, 1996.

do, OH, and Charles L. Glerum, Boston, MA, were on brief for appellee State Street Bank & Trust Company.

Before CYR, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Appellant Brockrim, Inc., entered receivership upon being sued by State Street Bank & Trust Company ("State Street") on unpaid obligations. The receiver, in an effort to satisfy all debts, pursued the sale of Brockrim's assets in Michigan and Ohio. The district court, in separate orders, approved the sale of both sets of assets but, because of the possibility that the Michigan sale could cover the debt, made the Ohio sale contingent on a later determination of its necessity. The court certified both orders as final and immediately appealable under Fed.R.Civ.P. 54(b).

In this appeal, Brockrim challenges the district court's certification and approval of the Ohio sale. We conclude that the order approving the Ohio sale (the "Ohio Order") is not final for purposes of appellate review, and, accordingly, dismiss Brockrim's appeal without prejudice.

### FACTS AND PROCEDURAL BACKGROUND

Brockrim is owner and operator of a billboard advertising business located in Ohio and Michigan. On June 8, 1994, State Street filed an action against Brockrim to collect approximately $3.2 million. The next day, the court appointed a receiver to operate and manage Brockrim, and to liquidate assets to satisfy Brockrim's debt. Over time, the receiver solicited offers for the purchase of the Michigan and Ohio assets, and eventually entered into purchase and sale agreements.

On October 25, 1995, after a hearing and auction, the court designated the bid from Gannett Outdoor Company of Michigan ("Gannett Outdoor") as the best offer for the Michigan assets. The bid was based on a multiple of gross monthly earnings as of the month before the date of closing, capped at $4.2 million.

Because the approximate debt owed by Brockrim ranged between $3.9 and $4.4 million (dependent on potential tax liability), it

Stephen F. Gordon, Boston, MA, for appellant.

Kevin W. Clancy, Boston, MA with whom Thomas W. Heintschel, Toledo, OH, Charles L. Glerum and Sara A. Walker Boston, MA, were on brief for appellee Hoolahan.

Sara A. Walker with whom Kevin W. Clancy, Boston, MA, Thomas W. Heintschel, Tole-

was not possible to determine whether the Michigan sale at closing would enable the receiver to satisfy all debts. Accordingly, the court conducted the Ohio auction, but with the understanding that a final sale would be contingent on a later determination of its necessity. The court designated Whiteco, Inc., as having the highest and best bid, but emphasized the conditional nature of the sale, stating,

> I think the appropriate thing for me to do is to accept this as a qualifying bid, but to advise you that before I approve the sale I will have to have another hearing.... [I]t seems to me a sensible thing ... to approve this with the conditions that we have stated as a part of the understanding for the auction process this afternoon and defer to another day, if indeed it becomes a live issue, doesn't become moot by reason of other circumstances, the final determination as to whether I should approve the sale of the Ohio assets in accordance with this bid.

On November 8, 1995, the court issued orders approving the sales of the Michigan and Ohio assets. The Ohio Order contained the following language:

> If and when this Court has made a determination that the sale of the Ohio Assets is necessary and Whiteco has elected to proceed with the purchase of the Ohio Assets, the terms and provisions of the Whiteco Offer ... shall be binding....

The culminating clause provided:

> There being no just cause for delay, this order is a final appealable order pursuant to *Federal Rule of Civil Procedure* 54.

On December 28, 1995, the district court issued a memorandum in support of certification. The court maintained that "the beneficial objectives of the Receivership would be imperiled if the ORDERS APPROVING SALE were not immediately appealable" and that a delay of appeal would "seriously impair the long-term maximum value of the assets," because it would "limit[ ] the owner's ability to adapt to changing market conditions and methods of use of [the] assets." The court closed by reporting an unexpected development: Gannett Outdoor had failed to receive internal approval for the purchase of the Michigan billboards, and was terminating its offer.

In this appeal, Brockrim contests the appropriateness of certifying the Ohio Order under Rule 54(b) and, alternatively, challenges the procedures by which Whiteco was awarded the bid.

## DISCUSSION

The district court certified the Ohio Order pursuant to Fed.R.Civ.P. 54(b), which provides:

> When more than one claim for relief is presented in an action, ... or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

■ We have delineated a two part process for evaluating the appropriateness of certification under Rule 54(b). First, we determine whether the district court action underlying the judgment had the "requisite aspects of finality." *Darr v. Muratore*, 8 F.3d 854, 862 (1st Cir.1993) (quoting *Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 43 (1st Cir.1988)). Second, we review the sufficiency of the district court's assessments of 1) any interrelationship or overlap among the various legal and factual issues involved and 2) any equities and efficiencies implicated by the requested piecemeal review. *Credit Francais Int'l, S.A. v. Bio–Vita, Ltd.*, 78 F.3d 698, 706 (1996); *Kersey v. Dennison Mfg. Co.*, 3 F.3d 482, 486 (1st Cir.1993); *see Spiegel*, 843 F.2d at 43.

■ The first step of the inquiry— whether the judgment is final—is subject to de novo review, *W.L. Gore & Assocs., Inc. v. IMPRA, Inc.*, 975 F.2d 858, 862 (Fed.Cir. 1992); *see Spiegel*, 843 F.2d at 43 ("The District Court *cannot*, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of [28 U.S.C.] § 1291.") (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900–01, 100 L.Ed. 1297 (1956) (emphasis in original)). To be final, a judgment must dispose of all the rights and liabilities of at least one party as to at least one claim. *Credit Francais Int'l, S.A.*, 78 F.3d at 706; *see Curtiss–*

*Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980).[1]

The determination of finality is governed by 28 U.S.C. § 1291. *Consolidated Rail Corp. v. Fore River Ry. Co.,* 861 F.2d 322, 325 (1st Cir.1988). As the Supreme Court explained in *Sears,*

> [Rule 54(b)] scrupulously recognizes the statutory requirement of a "final decision" under § 1291 as a basic requirement for an appeal to the Court of Appeals. It merely administers that requirement in a practical manner in multiple claims actions and does so by rule instead of by judicial decision.

351 U.S. at 438, 76 S.Ct. at 901. For our inquiry, therefore, it is instructive to consider whether the Ohio Order would count as a final decision under § 1291 in a hypothetical independent case. *See Horn v. Transcon Lines, Inc.,* 898 F.2d 589, 593 (7th Cir.1990).

■■■ A final decision under § 1291 is one that "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Digital Equipment Corp. v. Desktop Direct, Inc.,* — U.S. —, —, 114 S.Ct. 1992, 1995, 128 L.Ed.2d 842 (1994) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).[2] Here, before the sale becomes binding, the court must hold a hearing and resolve potentially difficult and disputed issues, including tax matters, receivership costs, and the actual amount that will be realized upon the Michigan sale. Quite clearly, the court action anticipated is not merely ministerial.

State Street insists that an order confirming a judicial sale of property is a final order under § 1291. But the cases it cites anticipate the immediate execution of a sale, not the possibility that a sale may take place. Indeed, the Ohio Order merely confirms Whiteco's option to buy the Ohio assets should some uncertain contingency occur. State Street cites no cases, nor have we found any, that indicate that such a conditional ruling should be characterized as "final." *See McMunn v. Hertz Equipment Rental Corp.,* 791 F.2d 88, 90 (7th Cir.1986) ("A contingent judgment is not final until the contingency materializes.").

Because the Ohio Order does not contain the "requisite aspects of finality," *Spiegel,* 843 F.2d at 43, we need not proceed to the second step of jurisdictional analysis under Rule 54(b). We conclude that certification of the Ohio Order under Rule 54(b) was erroneous.[3]

We also reject State Street's alternative argument that the appeal is reviewable pursuant to 28 U.S.C. § 1292(a)(2). That statute provides that:

> [T]he courts of appeals shall have jurisdiction of appeals from ... [i]nterlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property.

■■■ We think the statute is reasonably understood as authorizing appellate jurisdiction in three discrete situations: 1) the appointment of a receiver, 2) the refusal to wind up a receivership, and 3) the refusal to take steps to accomplish the purposes of a receivership. *F.T.C. v. Overseas Unlimited Agency, Inc.,* 873 F.2d 1233, 1235 (9th Cir.

---

1. We note that this concept of finality does not quite fit these circumstances. At a minimum, Rule 54(b) requires multiple parties or multiple claims. Here, one party (State Street) has primarily one claim (breach of a demand note) against one party (Brockrim). Though the receivership contemplates discrete liquidations of property, these dispositions can, only in the loosest sense, be said to constitute separate claims. Further, though Whiteco is an interested participant, it is questionable whether it can be considered a party to the action. Nonetheless, we need not resolve these questions. Even assuming that the Ohio sale can be severed from State Street's action against Brockrim, it still must have the requisite aspects of finality. We therefore focus our inquiry on the issue of finality.

2. In addition, under the collateral order doctrine, "those district court decisions that are conclusive, that resolve important questions completely separate from the merits, and that would render such important questions effectively unreviewable on appeal from final judgment in the underlying action" are treated as final decisions. *Id.* at 1995–96. It is beyond dispute that the Ohio Order does not meet any of these criteria.

3. Our analysis and conclusion necessarily disposes of State Street's alternative argument presented at oral argument that, regardless of Rule 54(b), the Ohio Order is appealable under 28 U.S.C. § 1291.

1989); *see S.E.C. v. American Bd. of Trade,* 829 F.2d 341, 344 (2d Cir.1987); *S.E.C. v. American Principals Holdings,* 817 F.2d 1349, 1351 (9th Cir.1987); *IIT v. Vencap, Ltd.,* 519 F.2d 1001, 1020 (2d Cir.1975); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3925, at 92 & n. 1, 99–100 (1977). *But see United States v. "A" Mfg. Co., Inc.,* 541 F.2d 504, 505–506 (5th Cir.1976) (applying § 1292(a)(2) to an order confirming a sale). Because the Ohio Order in no way represents a refusal to wind up the receivership or to take steps to accomplish the purposes thereof, § 1292(a)(2) does not apply.

*Brockrim's appeal is dismissed without prejudice.*