**DJ MANUFACTURING CORPORATION,**
Plaintiff,

v.

**TEX–SHIELD, INC., et al., Defendants.**

No. Civ. 97–1457(SEC).

United States District Court,
D. Puerto Rico.

Aug. 26, 1999.

Eugene F. Hestres–Velez, Bird, Bird & Hestres, San Juan, Puerto Rico, for plaintiff.

Daniel M. Abuhoff, Timothy K. Beeken, Robert H. Hotz, Debevoise & Plimpton, New York City, Pedro Jimenez–Rodriguez, Gonzalez Oliver, Correa Calzada, San Juan, Puerto Rico, Armando Lasa–Ferrer, Lasa Monroig & Veve, Guaynabo, Puerto Rico, for defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before the Court is defendant Tex–Shield's motion for Confirmation of Arbitral Award, Entry of Judgment and Prejudgment Interest (**Docket # 35**).

**Factual Background**

Plaintiff DJ Manufacturing Corporation ("DJM"), is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico that manufactures complex sewn clothing and equipage for United States military agencies. It is a small disadvantaged business as that term is utilized in regulations governing federal contracts, and is a certified participant in the Small Business Administration's ("SBA") 8(a) program for contract set-asides for small businesses.

Defendant Tex–Shield, Inc. ("Tex–Shield") is a corporation organized under the laws of Delaware, with its principal place of business in Mount Laurel, New Jersey. It is a wholly-owned subsidiary of a German corporation, Blucher GmbH, which holds a patent for certain technology used to produce chemical protective cloth which can be sewn into chemical protective garments purchased by agencies and departments of the United States Military.

In July of 1993 the United States Air Force ("USAF") issued a solicitation for bids for the sale of 40,000 Chemical Defense Coveralls (hereinafter "the Air Force solicitation"). Said procurement was limited to businesses participating in the SBA's 8(a) program, such as DJM. DJM was awarded the contract for the Air Force solicitation for the sale of 40,000 coveralls at a unit price of $375.15, for a total contract price of $15,000,000. The USAF specified that the coveralls produced must be · manufactured using a chemical protective material known as "Saratoga Filter Cloth"; Tex–Shield was named as the sole approved source for the cloth.

After DJM was awarded the USAF contract, DJM and Tex–Shield entered into a subcontract (the "subcontract") which provided that DJM would buy the Saratoga Filter Cloth from Tex–Shield at a price of $49.27 per yard. Subsequently, DJM and Tex–Shield entered into a "technical services" contract whereby Tex–Shield agreed to provide DJM with certain technical services for a fee of $35,000 a month for a period of twelve months.

The subcontract entered into by DJM and Tex–Shield contained a clause providing for the arbitration of all disputes between them arising under or relating to said subcontract. Clause 11(A) of the subcontract reads as follows:

> Prime Contractor and Subcontractor agree to binding arbitration of all disputes between them arising under or relating to this Subcontract that cannot otherwise be resolved between the parties. Except as otherwise agreed by the parties, such arbitration shall be conducted in the city of

New York, in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

On June 24, 1994 the Defense Personnel Support Center ("DPSC") issued a solicitation for proposals for the sale of a minimum of 100,000 chemical and biological suits and for an additional quantity at the option of the DPSC. As with the Air Force solicitation, the DPSC solicitation was also limited to SBA 8(a) program participants. These suits were also to be made from Saratoga Filter Cloth, and once again, Tex–Shield was the sole approved source for the cloth.

Pursuant to the DPSC solicitation, Tex–Shield quoted DJM a price of $38.71 per yard for the first 100,000 suits, and $41.00 per yard for any additional quantity. In addition, Tex–Shield sent a proposal to DJM to sell DJM the Saratoga Filter Cloth in the form of pre-cut kits at $148.95 for the first 100,000 kits, and for $154.43 for any additional quantity. In light of those numbers, DJM proposed to the DPSC a bid price of $187.62 for the first 100,000 suits, and $193.50 for any additional quantity. DJM was not awarded the DPSC contract, which instead was awarded to Creative Apparel Associates, which had bid $179.55 for the first 100,000 suits, and $186.02 for any additional quantity.

**Procedural History**

DJM's complaint against Tex–Shield contains four counts, all of which allege violations of various federal antitrust statutes. Count One alleges that Tex–Shield's demand that DJM purchase its "technical services" in addition to the Saratoga Filter Cloth it required for the USAF contract constituted an illegal tie-in arrangement in violation of the Sherman Act. In addition, in Count Two, DJM alleges that Tex–Shield incurred in price discrimination against DJM in the pricing of the Saratoga Filter Cloth in relation to the USAF contract in violation of Section 2(a) of the Robinson–Patman Act.

Count Three of the complaint contains allegations that Tex–Shield committed price discrimination against DJM in relation to the DPSC contract, characterized as an unreasonable restraint of trade in violation of Section 1 of the Sherman Act and Section 3 of the Clayton Act. In Count Four of the complaint, DJM alleges that Tex–Shield price discriminated against DJM in relation to the DPSC contract, in violation of Section 2(a) of the Robinson–Patman Act.

In response to DJM's complaint, Tex–Shield filed a petition to stay proceedings pending arbitration pursuant to the mandate contained in Section 3 of the Federal Arbitration Act ("FAA"). This Court granted in part and denied in part the petition to arbitrate. We stayed the proceedings stayed pending the outcome of the arbitration of Counts One and Two of the complaint. The stay would be lifted upon the resolution through arbitration of the first two counts.

On January 20, 1999, the arbitrator issued an award granting Tex–Shield recovery in the amount of $583,416 plus prejudgment interest. (Docket # 35, Exhibit I, "Award of Arbitrator"). The Arbitrator dismissed DJM's claim for relief under the Robinson–Patman Act pursuant to DJM's voluntary withdrawal of that claim. *Id.* The arbitrator denied relief to DJM under Section 264 of the Anti-monopoly laws of Puerto Rico since "the evidence did not establish that a 'discrimination' in quotes actually occurred" or that any discrimination related to "goods of like grade or quality" as prescribed by the statute. *Id.*

Furthermore, the arbitrator also held that the evidence did not support a finding "that the difference in quotes was the proximate cause of the damages claimed." *Id.* The arbitrator proceeded to dismiss DJM "tie-in" claim under Section One of the Sherman Act because, among other reasons, DJM failed to produce evidence that establish that it was coerced by Tex–Shield "to agree to the alleged tied product." *Id.* The Arbitrator further denied monetary relief on DJM's breach of contract claim. Conversely, the Arbitrator granted relief upon Tex–Shield's first and third counterclaims in the amount of $583,416, inclusive of all interests and finance charges up to and including the date of the award. *Id.*

Finally, it denied Tex–Shield's counterclaim for breach of the arbitration clause, since DJM had "reasonable grounds other than the duress argument for [DJM's] pro-

ceeding initially in United States District Court in Puerto Rico rather than in arbitration." *Id.* Tex–Shield now seeks to enforce such arbitration award, and requests the entry of partial judgment under Fed.R.Civ.P. 54(b). Plaintiff DJM does not oppose the confirmation of the arbitration award, but opposes the entry of partial judgment under Fed.R.Civ.P. 54(b) and seeks a stay of the pending claims under Fed.R.Civ.P. 62(h). Upon review of the parties' arguments and the applicable law, the Court will grant Tex–Shield's motion to confirm the arbitration award, but it declines to enter partial judgment pursuant to Fed.R.Civ.P. 54(b) or stay the case under Fed.R.Civ.P. 62(h).

### Applicable Law/Analysis

While "there is a long-settled and prudential policy against the scattershot disposition of litigation," *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 42 (1st Cir.1988), which thus severely curtails the availability of appeals of partial judgments, Rule 54(b) provides for the entry of judgment and the availability of appeal on fewer than all the claims in a multi-claim action.[1] A certification by the district court under Rule 54(b) would render an appeal of said partial judgment permissible under 28 U.S.C. § 1291. Once the district court has determined that certification under Rule 54(b) is proper, "the court must make an 'express direction for the entry of judgment' in conformity with Fed. R.Civ.P. 58 and 79(a), which require that the judgment be set forth as a separate document and that a corresponding entry be made in the court's docket." *Willhauck v. Halpin,* 953 F.2d 689, 701 (1st Cir.1991).

■ In *Spiegel, supra,* the First Circuit Court of Appeals set forth the two-part process that must be utilized by a district court when determining whether Rule 54(b) certification is appropriate. First, "the trial court must ... assess the finality of the disputed ruling." *Spiegel,* 843 F.2d at 42. The First Circuit has stated to that effect that a proposed judgment is final when "it disposes

completely either of all claims against a given defendant or of some discrete substantive claim or set of claims against the defendants generally." *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 580 (1st Cir.1994). The First Circuit has also held that "[a] final decision under § 1291 is one that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *State Street Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487, 1490 (1st Cir. 1996) (internal citations omitted). If the proposed ruling is not final, the district court may not grant certification under the rule.

Once the district court has determined that the proposed ruling is final, it must determine whether, as stated in the rule, "there is no just reason for delay" in entering final judgment. *Spiegel,* 843 F.2d at 43. The Supreme Court has labeled the district court's role as that of a "dispatcher", *see Id.,* "exercising its discretion to decide which 'final' decisions in a multi-claim action should be sent upstairs immediately and which withheld pending resolution of the entire controversy in the district court." *Id.* In making this "case-specific" inquiry, the district court must "trac[e] the interrelationship between, on one hand, the legal and factual basis of the claims undergirding the proposed judgment (i.e. the jettisoned claims), and on the other hand, the legal and factual basis of the claims remaining in the case." *Maldonado–Denis,* 23 F.3d at 580. In so doing, the district court must also "examine whether finality of judgment will advance the interests of judicial administration and public policy." *Consolidated Rail Corporation v. Fore River Railway Co.,* 861 F.2d 322, 325 (1st Cir.1988).

■ Once the district court has concluded that the proposed judgment may be certified under Rule 54(b), it is "obliged to specifically enumerate all of the factors and concerns relied upon when reaching its decision." *Id.* If the court specifies the basis for its decision to certify, its discretion will be afforded "sub-

---

1. Rule 54(b) states in pertinent part: "When more than one claim for relief is presented in an action ... or where multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

**38**

stantial deference." *See Id.* at 325–26; *Spiegel,* 843 F.2d at 44. Among the factors that should be taken into account by the district court in determining whether the proposed judgment complies with the second prong of the *Spiegel* test are: whether the same parties that are on appeal are still parties in the portion of the litigation pending before the district court, *Consolidated Rail,* 861 F.2d at 326; whether the "factual underpinnings of the adjudicated and unadjudicated counts are … inextricably intertwined", *Spiegel,* 843 F.2d at 45; and whether there is an "urgent need for immediate review" or whether the trial of the remaining claims might have the effect of mooting the issues on appeal, *Maldonado–Denis,* 23 F.3d at 580. *See also Comite Pro Rescate De La Salud v. Puerto Rico Aqueduct and Sewer Authority,* 888 F.2d 180, 183–84 (1st Cir.1989).

**Rule 54(b) certification is improper**

■ Upon review of the facts and the equities of this case, the Court finds that entry of judgment pursuant to 54(b) would be inappropriate. An entry of judgment confirming the arbitration award would dispose of some claims pending against the defendant DJM, but it would not dispose of several claims that were severed from the arbitrable claims. (**Docket # 26**) Thus, the essential elements of finality to make it appealable pursuant to 28 U.S.C. § 1291 are unclear, and therefore fail to meet the first prong of the *Spiegel* two-part test.

Even if the arbitrable claims could be considered final, we also find that the balance of the equities do not warrant certification under the rule. The pending claims that were not submitted to arbitration, Counts 3 and 4 of DJM's complaint, although not sufficiently related to the other claims to be subject to arbitration, are nevertheless derived from the same nucleus of operative facts as the arbitrable claims. Those severed claims have been stayed since March 31, 1998, almost a year and a half without any discovery or resolution of these claims. (**Docket # 26**) To stay those claims yet again, whether through entry of judgment under Rule 54(b) or Rule 62(h), as requested by DJM, would create needless stagnation of those claims.

It is a long-established principle that "[c]ourts are vested with an inherent power to control and manage their own affairs so as to achieve early and expeditious disposition of cases." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). The logic behind this precept is clear: "in a period of overloaded dockets, prejudice to the court is inherent in needless delays and postponements." *Chuang Investments v. Eagle Inns, Inc.,* 81 F.3d 13 (1st Cir.1996).

In view of the circumstances described above, the Court declines to enter judgment pursuant to Fed.R.Civ.P. 54(b) or Fed. R.Civ.P. 62(h) and will enter partial judgment confirming the Arbitral Award and orders payment from DJM to Tex–Shield in the amount of $583,416.00 and Prejudgment Interest since the issuance of the Arbitral Award on January 20, 1999, in the amount of $19,300.68.

**SO ORDERED.**