**LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**GREENWICH INSURANCE COMPANY, Defendant.**

**No. CIV.A.2002–10160–RBC.[1]**

United States District Court, D. Massachusetts.

Aug. 17, 2004.

---

1. With the parties' consent, on June 6, 2002 this case was referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Douglas R. Gooding, Gregg D. Shapiro, W. Daniel Troyka, Kara M. Zaleskas, Choate, Hall & Stewart, Boston, MA, for Liberty Mutual Insurance Company, Plaintiff.

Lawrence R. Moelmann, Hinshaw & Culbertson, Chicago, IL, Douglas W. Salvesen, Yurko & Salvesen, P.C., Boston, MA, for Greenwich Insurance Company, Defendant.

## MEMORANDUM AND ORDER ON ENTRY OF SEPARATE JUDGMENT PURSUANT TO RULE 54(b), FED. R. CIV. P.

COLLINGS, United States Magistrate Judge.

On June 3, 2004, the Court issued a Procedural Order On The Entry Of Separate And Final Judgment On Certain Of Greenwich's Counterclaims (# 114) directing the parties to file memoranda addressing the Court's proposed course of action. After due consideration of the parties' submissions (## 115, 116), the Court has determined to enter a separate and final judgment on various claims in this case as follows: Judgment shall enter for the plaintiff Liberty Mutual Insurance Company ("Liberty") on Count I of the amended complaint as well as Counts I, II, III, IV, V, VI, VII and VIII, ¶ 55(a)-(f), of defendant Greenwich Insurance Company's ("Greenwich") counterclaim for declaratory relief and accounting. The remaining claims in the amended complaint and counterclaim relate either to post-bankruptcy or accounting issues.

The breach of contract claim alleged in Count I of the amended complaint was resolved via the Further Memorandum And Order On Liberty's Motion For Summary Judgment (# 82) issued on October 3, 2003. In that count, Liberty claimed that, upon the happening of certain events of default under an agreement between Liberty and American Tissue, Greenwich became liable to pay Liberty the full penal amount of a security bond it has issued to secure American Tissue's performance, but failed to do so after demand. The Court concluded that American Tissue's filing of

a petition for bankruptcy on September 10, 2001 did constitute a default and, consequently, that Liberty's claim under the terms of the agreement for the full penal amount of the bond was valid.[2]

Count II of the amended complaint sets forth a claim for violation of Massachusetts General Laws chapter 93A and Massachusetts General Laws chapter 176D. The substantive allegation is that "Greenwich's several failures timely to pay Liberty the full penal sum of the Bond constitute unfair claims settlement practices and unfair and deceptive acts or practices." (# 24 ¶ 26) The first time Liberty submitted a claim on the bond was by certified letter dated October 9, 2001, approximately one month after American Tissue filed for bankruptcy. (# 22 at 8; # 24 ¶ 20) Given this timing, it is clear that the claims in Count I and II are factually, legally and temporally distinct.

Like the affirmative defenses, Counts I, II, III, IV, V, VI and VII of the counterclaim were rendered moot or effectively denied by the summary judgment decision. Count VIII is a claim under Massachusetts General Laws chapter 93A, part of which will be dismissed as explained more fully hereinafter. Counts IX and X are accounting claims and a claim for declaratory relief respectively which, while related to the breach of contract claim in Count I of the amended complaint, are nevertheless readily separable factually.

Greenwich's chapter 93A claim has been broken down into subparts and so will be addressed in similar fashion. Liberty's alleged unfair and deceptive acts include the following: "Seeking to require Greenwich

to pay $3,700,000, which Liberty asserted was the full penal amount of the Bond, where Liberty had agreed with American Tissue to reduce the amount of the Bond to $1,777,500." (# 20 ¶ 55(a)) That claim was specifically denied in the summary judgment opinion when the Court concluded that "[i]t was within Liberty's discretion whether to reduce the amount of the bond, and that discretion was never exercised." (# 59 at 13)

■ The next purported unfair act was Liberty "[s]eeking to enforce remedies under the Bond that are inapplicable to the specific Event of Default asserted against American Tissue." (# 20 ¶ 55(b)). To the extent that this claim was not mooted by the summary judgment decision, it is unavailing because Greenwich has not identified any "loss of money or property, real or personal" flowing from this conduct. *See* Mass. Gen. L. c. 93A, § 11; *Warner–Lambert Co. v. Execuquest Corp.*, 427 Mass. 46, 48, 691 N.E.2d 545, 547 (1998)("In order to succeed on the G.L. c. 93A claim, the plaintiff must prove that it suffered 'loss of money or property.' G.L. c. 93A, § 11. Alternatively, if it has not suffered any loss of money or property, it may obtain an injunction 'if it can be shown that the aforementioned unfair method of competition, act or practice may have the effect of causing such loss of money or property.' *Id.*")[3]; *Lord v. Commercial Union Ins. Co.*, 60 Mass.App.Ct. 309, 317, 801 N.E.2d 303, 310–311, *rev. denied*, 441 Mass. 1104, 805 N.E.2d 45 (2004).

This same rationale applies to subsections (c), (d) and (e).[4] These aspects of

---

2. The Memorandum And Order On Liberty's Motion For Summary Judgment (# 59) and the Further Memorandum (# 82) effectively denied or mooted all of Greenwich's affirmative defenses. Familiarity with these opinions is assumed.

3. Greenwich does not plead for injunctive relief in Count VIII of its counterclaim.

4. Paragraph 55(c) reads: "Asserting that American Tissue's failure to increase the letter of credit by $250,000 was an Event of Default where Liberty failed to effectively exercise its option under the Agreement to re-

Greenwich's chapter 93A claim were rendered irrelevant or moot by the entry of judgment as a matter of law on Count I of the amended complaint. Moreover, again, no loss of money or property resulted from the acts alleged.

The unfair act alleged in ¶ 55(f), "[s]eeking payments from Greenwich grossly in excess of any actual damages sustained by Liberty", was denied or mooted by the Court's decision that, in fact, Liberty was entitled to the full penal amount of the bond under the terms of the agreement.

In its Memorandum With Respect to Its 93A Claim (# 115), Greenwich argues that the issues raised in ¶ 55(b)-(f) are "more complex" than the Court describes. (# 115 at 2) Specifically, Greenwich contends that "Liberty's wrongful actions may have forced American Tissue to seek protection under the Bankruptcy Code, causing substantial loss to both American Tissue and Greenwich."[5] (# 115 at 2) Further, it is asserted that "Liberty pursued a wrongful course of conduct for the sole purpose of 'creating' an Event of Default by American Tissue so that Liberty could attempt to cancel the American Tissue insurance policies and collect the full amount of the bond." (# 115 at 3)

■ The fundamental problem with Greenwich's position is that the contentions advanced in its memorandum quite simply are not pled in its 93A claim. Sub-

parts (b) through (f) of paragraph 55 are alleged as discrete acts in the counterclaim. There is no allegation whatsoever that these acts should be viewed as a pattern of conduct designed for the purpose of ultimately collecting the full sum of the bond from Greenwich. Similarly, there is no allegation that Liberty's conduct somehow forced American Tissue into filing for bankruptcy, nor can what is alleged fairly be read to support that theory. From all that appears Greenwich is engaging in a revisionist interpretation of its allegations in a last-ditch effort to avoid the entry of judgment on its claim. Its attempt is unavailing.

The bottom line is that the facts and theories argued in Greenwich's brief are not alleged in Count VIII of its counterclaim. The claim as alleged in ¶ 55(b)-(f) is subject to dismissal.

■ The final portion of the chapter 93A claim, ¶ 55(g), relates to the accounting issues which remain in the case.[6]

In Count IX of its counterclaim, Greenwich requests an accounting with respect to "the nature and extent of the losses in connection with the American Tissue insurance policies and with respect to the payments that are actually due and owing from American Tissue." (# 20 ¶ 59) The underlying insurance policies at issue are workmen's compensation policies. Due to the nature of the claims made under these

---

quire the increase in the letter of credit". The unfair act alleged in ¶ 55(d) is "[d]emanding that the letter of credit be increased by $250,000 where, on information and belief, the sole reason for such demand was to create an Event of Default." Finally, ¶ 55(e) contends that Liberty violated chapter 93A by "[a]sserting that American Tissue's reimbursement obligations were outstanding where such obligations had in fact been satisfied by a draw upon a letter of credit."

5. The defendant "recognizes that American Tissue eventually would have filed for bank-

ruptcy", but contends that the filing came earlier than what otherwise would have been necessary due to Liberty's threat on September 10, 2001 to cancel American Tissue's workers compensation policies if deductible payments were not forthcoming. (# 115 at 4)

6. Paragraph 55(g) reads: "Failing and refusing to permit Greenwich to examine its books and records, or provide it with other information, to evidence the deductible reimbursements, adjusted or other premiums, or other obligations allegedly owing to Liberty under the Agreement."

types of policies, the parties agree that the final numbers will not be known for years to come.

In the claim recently added to the counterclaim, Count X, Greenwich seeks a declaration regarding the aggregate limit of the 1999 workers' compensation insurance policies. In the summary judgment motion the Court determined that Liberty is presently entitled to the full penal amount of the bond. The aggregate limit will establish how much of that bond properly can be applied for payments under the 1999 policies. Thus the claim advanced in Count X of the counterclaim is factually and legally distinct from the claim decided on summary judgment. Indeed, discovery on the issues involved in this claim has just recently begun.

The entry of a separate and final judgment on the claims as described hereinabove is warranted under the law. In pertinent part Rule 54(b), Fed.R.Civ.P., provides that:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no reason for delay and upon an express direction for the entry of judgment.

Fed.R.Civ.P. 54(b).

The seminal case in this Circuit detailing "the preferred practice under Rule 54(b)"[7] is *Spiegel v. Trustees of Tufts College*, 843 F.2d 38 (1 Cir., 1988). In *Spiegel*, the Court detailed the process to be undertaken by the district court:

> When considering the wisdom of Rule 54(b) certification in a given case, the trial court must first assess the finality of the disputed ruling. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1,

43, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980); *United States General, Inc. v. Albert*, 792 F.2d 678, 680–81 (7th Cir. 1986); *Bank of New York*, 108 F.R.D. at 186. If the ruling lacks the necessary finality, the application must fail. As the Court has said, "[t]he District Court cannot, in the exercise of its discretion, treat as 'final' that which is not 'final' within the meaning of [28 U.S.C.] § 1291." *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956) (emphasis in original). As an adjunct of this inquiry, of course, it must be shown that the ruling, at a bare minimum, disposes fully "of at least a single substantive claim." *Acha v. Beame*, 570 F.2d 57, 62 (2d Cir.1978).

> Once the finality hurdle has been cleared, the district court must determine whether, in the idiom of the rule, "there is no just reason for delay" in entering judgment. Fed.R.Civ.P. 54(b). The court's role becomes that of a "dispatcher," *Sears, Roebuck*, 351 U.S. at 435, 76 S.Ct. at 900, exercising its discretion to decide which "final" decisions in a multi-claim action should be sent upstairs immediately and which withheld pending resolution of the entire controversy in the district court. *See Pahlavi*, 744 F.2d at 904. The process, tilted from the start against fragmentation of appeals, is necessarily case-specific. It entails an assessment of the litigation as a whole, and a weighing of all factors relevant to the desirability of relaxing the usual prohibition against piecemeal appellate review in the particular circumstances. If, in consequence of this examination, the district court concludes that entry of judgment under Rule 54(b) is appropriate, it should ordinarily make specific findings setting forth the rea-

7. *Feinstein v. Resolution Trust Corporation,* 942 F.2d 34, 39 (1 Cir., 1991).

sons for its order. *Knight v. Mills,* 836 F.2d 659, 661 n. 2 (1st Cir.1987); *Santa Maria,* 808 F.2d at 854–55; *Pahlavi,* 744 F.2d at 904–05. Doing so, we hasten to add, serves a twofold purpose: it helps the district judge to sort out and weigh the competing considerations in his own mind, and it permits the appellate court effectively to review the ruling.

*Spiegel,* 843 F.2d at 42–43 (footnotes omitted); *see also Clair International, Inc. v. Mercedes–Benz of North America, Inc.,* 124 F.3d 314, 318(1 Cir., 1997); *Nichols v. The Cadle Co.,* 101 F.3d 1448, 1449 (1 Cir., 1996); *State Street Bank & Trust Co. v. Brockrim, Inc.,* 87 F.3d 1487, 1489 (1 Cir., 1996); *Credit Francais International, S.A.,* 78 F.3d 698, 706 (1 Cir.1996); *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 580 (1 Cir., 1994).

The *Spiegel* court further admonished that:

notwithstanding the order of dismissal, the action remains pending for trial in the district court as to all of the parties. This circumstance alone counsels hesitation in the use of Rule 54(b). *Brunswick Corp. v. Sheridan,* 582 F.2d 175, 183 (2d Cir.1978); *Bank of New York,* 108 F.R.D. at 187. It will be a rare case where Rule 54(b) can appropriately be applied when the contestants on appeal remain, simultaneously, contestants below.

*Spiegel,* 843 F.2d at 40; *Nichols,* 101 F.3d at 1449; *Credit Francais International,* 78 F.3d at 707.

The Court finds that the pertinent criteria have been met in the instant case.

First, all the claims upon which judgment shall enter are final. As earlier delineated, the judgment will enter upon claims between the parties which can be clearly segregated, factually and legally, from the claims remaining in the case. While recognizing that the same parties, Liberty and Greenwich, will remain as parties here in the trial court, the Court is of the firm belief that the circumstances of this case warrant the action being taken.

Second, the Court finds that there is no just reason for delay in entering the judgment for several reasons. All of the claims adjudicated to date basically have risen or fallen upon the Court's determination that the bankruptcy defense was personal to American Tissue such that Greenwich, as surety to American Tissue, could not avail itself of its protection. In other words, rather than the *ipso facto* clause in the agreement being void as it would have been against American Tissue, the Court concluded that the filing of the bankruptcy petition was an event of default under the agreement such that Liberty was entitled to receive the full penal amount of the bond from Greenwich. There was little guidance to be gleaned from the case law when deciding this issue, and none on point in this Circuit.

Second, the decision in favor of Liberty on Count I of the amended complaint will likely be rendered moot by the passage of time. As previously noted, it is anticipated that the final numbers on the workers' compensation claims will not be known for years. Because of this unique circumstance, the accounting issues will remain extant for a lengthy, but unknown, period of time. Absent the entry of a final and separate judgment, the Court has no way to enforce its ruling.

Third, it is likely that the claims remaining in this case will be resolved short of trial. While the avoidance of a trial is not a primary reason for the action being taken, it is nevertheless a consideration.

To summarize, for all the reasons stated, I find that the entry of judgment under Rule 54(b) is warranted given the constellation of circumstances in this case. I further find that "there is no just reason for delay". It is therefore ORDERED

14

that judgment enter for the plaintiff Liberty on Count I of the amended complaint[8] as well as Counts I, II, III, IV, V, VI, VII and VIII, ¶ 55(a)-(f), of defendant Greenwich's counterclaim for declaratory relief and accounting.

---

8. As previously noted, the face amount of the bond at issue in Count I is $3,700,000.00. The parties agree that as of this date Greenwich has paid Liberty a total of $1,738,496.31 on that bond. Thus, judgment shall enter in the amount of $1,961,503.69, that figure representing the difference between the face amount of the bond and the sum already paid. Prejudgment interest shall run from the date that Liberty first made a demand to Greenwich for payment of the full face bond, to wit, October 9, 2001. *See* Mass. Gen. L. c. 231, § 6C.